## DISTRICT OF COLUMBIA v. DE HART.
### No. 7779.

United States Court of Appeals for the
District of Columbia.
March 24, 1941.

See, also, —— App.D.C. ——, 119 F.2d 451.

Richmond B. Keech, Corp. Counsel, Vernon E. West, Principal Asst. Corp. Counsel, and Glenn Simmon, Asst. Corp. Counsel, all of Washington, D. C., for petitioner.

Paul M. DeHart, pro se.

Phineas Indritz, amicus curiae.

Before STEPHENS, MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

The question presented on this appeal from a decision of the Board of Tax Appeals, in favor of respondent DeHart, is whether he is entitled to a refund of income tax paid to the District of Columbia for the year ending December 31, 1939, in the amount of $16.36. The pertinent language of the applicable statute reads as follows:[1]

"Tax on Individuals.—There is hereby levied for each taxable year upon the taxable income of every individual *domiciled* in the District of Columbia on the last day of the taxable year a tax at the following rates: * * * [Italics supplied]"

In the case of Sweeney v. District of Columbia,[2] this court decided that the controlling consideration in determining the domicil of a person engaged in government service in the District of Columbia is found not in length or definiteness

---

[1] Section 2(a) of the District of Columbia Income Tax Act (Act of July 26, 1939, 53 Stat. 1087, D.C.Code (Supp. V, 1939) tit. 20, § 980a).

[2] 72 App.D.C. 30, 113 F.2d 25, 129 A. L.R. 1370, certiorari denied, 310 U.S. 631, 60 S.Ct. 1082, 84 L.Ed. 1402.

of term, nor in election as against appointment, nor in any compulsion peculiar to military men, but in the fact that federal duty requires residential presence in the District, upon the part of all who must come and remain here to do the work of the government. Accordingly, we held that one who comes to the District and remains to render service to the government which requires his presence here may retain his domicil in the state from which he comes until the service terminates, unless he gives clear evidence of his intention to forego his state allegiance; that the presumption of continuity of state domiciliation would require strong evidence to overcome it; that mere proof of long residence in the District, or ambiguous showing of intention to change, would be insufficient for this purpose; but that, instead, evidence of intention to change domicil must be clear and unequivocal. An examination of the legislative history of the Act involved in the present case clearly reveals Congressional intent that the same result should be reached in its administration.[3]

■ This, therefore, is the established law of the District of Columbia; as both parties agree. The District has prosecuted its appeal to determine, however, whether the facts of the present case bring it within the law as thus declared. The Board of Tax Appeals found, among other things, that respondent DeHart for several years last past has been and still is residing in the District of Columbia; he is in the Civil Service of the United States as Chief Clerk of the Personnel and Organization Division of the National Guard Bureau, War Department, with offices in Washington, D. C.; he was born and reared in Pennsylvania and resided there until 1914, when he came to the District of Columbia; his parents continue to reside at 1933 North Fourth Street, Harrisburg, in which premises respondent's room is maintained intact and in which room some of his clothes and his childhood toys are kept; he claims these premises as his "legal residence;" he pays no sum as rent or for lodging, but makes monetary presents to his parents from time to time; he visits his parents' home over week ends at least eight times a year, and has been there between Christmas and New Year of each year; he is, and has been since he came of age, a registered voter in Pennsylvania, and has voted in all general elections there during that period; he paid the Pennsylvania poll tax each year until the repeal of the poll tax law, and since that

[3] Senator Overton, Chairman of the subcommittee of the Committee on Appropriations for the District of Columbia and Chairman of the Senate Conference on the bill, in presenting the Conference report said, on the floor of the Senate [84 Cong.Rec., July 11, 1939, 12347]: "Mr. President, I now call attention to the fact that the individual income tax is imposed only on those domiciled in the District of Columbia. It, therefore, necessarily excludes from its imposition all Senators and Members of the House of Representatives, the President of the United States, all Cabinet officers, and all Federal employees who have been brought into the District from the various States of the Union to serve their country in the National Capital, provided such employees have not of their volition surrendered their domiciles in the States and have voluntarily acquired domiciles within the District of Columbia."

Mr. Nichols, Chairman of the Committee on the District of Columbia, in submitting the Conference report and statement, on the floor of the House said [84 Cong.Rec., July 12, 1939, 12529]: "Since the question of the effect of the word 'domicile' in this act has been raised, I think the House would probably like to have the legal definition read: 'Domicile is the place where one has his true, fixed, permanent home and principal establishment and to which, whenever he is absent, he has the intention of returning, and where he exercises his political rights. * * * There must exist in combination the fact of residence and animus manendi—' which means residence and his intention to return; so that under this definition he could certainly live in the District of Columbia and have his legal domicile in any other State in the United States."

On the same day, Mr. Bates, one of the conferees on the part of the House, during the debate, said on the floor of the House [84 Cong.Rec., July 12, 1939, 12528]: "That particular point that my colleague from Massachusetts raises was made very pointedly in the committee of conference by both the gentleman from Illinois and myself. We raised that particular point because we are much concerned about how those who come from our States would be affected by the income-tax provisions of the new law, and it was distinctly understood that in this bill there should be no triple taxation, and I well recall Senator Tydings raising the point also."

time has annually paid the Pennsylvania occupational tax; he expects retirement in four years and intends to leave Washington at that time. The Board found, also, a number of facts concerning respondent's attachments in Washington, D. C., including marriage to a native of Washington; purchase and occupancy of a home in Washington; an agreement with his wife, prior to her death in 1935, that upon retirement they would spend six months at Selby-on-the-Bay, in Maryland, where he purchased an unimproved lot for a future summer residence; bank accounts in Washington institutions; church and lodge memberships and contributions for charitable purposes in Washington; and filing of federal income tax returns in Baltimore, Maryland. Finally, the Board found that at the end of one year after he removed to the District of Columbia, respondent had an intention to remain and make his home in the District of Columbia for an indefinite period of time, and that this intention "remained with him at least until the death of his wife."

Upon the basis of its findings, and upon the authority of the Sweeney case, the Board concluded that the respondent was not domiciled in the District of Columbia; hence that the tax paid by him was erroneously paid and must be refunded. The record contains no transcript of the evidence and the findings are unchallenged. The Board of Tax Appeals, in our view, correctly decided that the reasoning of the Sweeney case is conclusive of the issue presented here, and correctly held that respondent was not domiciled in the District of Columbia on December 31, 1939, the taxable date.

Affirmed.