**DISTRICT OF COLUMBIA v. MURPHY.**

No. 7780.

United States Court of Appeals for the District of Columbia.

March 24, 1941.

Richmond B. Keech, Corp. Counsel, Vernon E. West, Principal Asst. Corp. Counsel, and Glenn Simmon, Asst. Corp. Counsel, all of Washington, D. C., for petitioner.

Harry R. Turkel, of Washington, D. C., and Henry C. Murphy, pro se, for respondent.

Phineas Indritz, amicus curiae.

Before STEPHENS, MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

This is a companion case to District of Columbia v. DeHart, —— App.D.C. ——, 119 F.2d 449, decided this day. The applicable statute is the same;[1] the same issue of law is presented, and, in our view, the case is controlled by the reasoning of the decision of this court in Sweeney v. District of Columbia.[2] However, in view of certain differences in the facts found by the Board of Tax Appeals, this separate opinion is filed. In the present case, the Board's findings reveal that respondent Murphy graduated from college in 1929; immediately thereafter accepted employment in Detroit, Michigan; took up residence in Detroit; "became a registered voter in Wayne County, Michigan, and still is such; and has ever since voted in the elections and primaries there, the last time being in the Michigan primaries in September 1940." In January, 1935, respondent accepted employment in the District of Columbia with the Treasury Department of the United States; was blanketed into Civil Service in 1938, and is still in government service. Respondent is an unmarried man; he resides in an apartment in the District of Columbia, furnished with his own furniture and equipment; his parents live in California. Concerning his intentions he testified: "I hope to retain the position I have in the Federal Government indefinitely but if I don't I will be going back to Detroit because that is where all my business connections are. I have kept in touch with the people with whom I was in business there and except for the employment here with the Federal Government, Detroit is my home. * * * Q. Have you a home in Detroit? A. No, I have no property of my own there. I have lived there and voted there and it is the only place where I have connection other than with the Federal Government. It is the place to which I will return if I ever become disemployed by the Government, which I hope will not happen, I would return to Detroit."

The government relies particularly upon certain testimony of respondent—to challenge the finding of the Board that he was not domiciled within the District of Columbia on December 31, 1939—as follows:

"Q. * * * What is the difference between your mental operation after you went to Detroit and when you first came to Washington as to the tenure of residence? A. When I first went to Detroit I thought of a career. I had been a student and I thought I was starting something new. When I came to Washington my original idea was to get two or three years' experience which would be valuable to me elsewhere.

"Q. But you have since abandoned that idea? A. I can say this—at the end of five years here I am no nearer leaving than when I came. You probably don't have the same feeling of permanency here that you would in Detroit.

"Q. You didn't have much of a feeling of permanency in Detroit when you left there to come to Washington, did you? A. No, although I can say that when I left Detroit to come to Washington it was sudden. It was an offer that I couldn't turn down.

"Q. After you were here two years you say you abandoned the idea you had which was somewhat nebulous? A. The idea was nebulous in the first place but I can not say it was abandoned. It has become attenuated. It depends on the circumstances.

"Q. If you were offered a position in Boston, New York, or St. Louis you—which is superior to your position here, you would go there, wouldn't you? A. I very likely would.

"Q. You are not insistent that such place be Detroit? A. I have a preference for Detroit. It is a place where I would fit in more easily.

"Q. Suppose your friend who is in Detroit moved to St. Louis to a bank there— A. He just came from Kansas City to Detroit after the banking holiday. These things are transient. I doubt if any of us would hesitate to make the change if we could better ourselves.

"Q. But you would go there if you could better yourself? A. Yes.

"Q. Suppose you were offered a satisfactory position in New York, would you go there? A. Yes.

---

[1] Section 2(a) of the District of Columbia Income Tax Act (Act of July 26, 1939, 53 Stat. 1087, D.C.Code (Supp. V, 1939) tit. 20, § 980a).

[2] 72 App.D.C. 30, 113 F.2d 25, 129 A. L.R. 1370, certiorari denied, 310 U.S. 631, 60 S.Ct. 1082, 84 L.Ed. 1402.

"Q. But until such satisfactory position presents itself you will continue at the Treasury Department, provided your work is as attractive as it is now? A. That's right.

"Q. The thing I meant to suggest, and what I understood you to say your attachment to Detroit was because of your friends there. If you had that contact elsewhere would you go there—if this friend of yours who is in the bank in Detroit were to go elsewhere would you go with him? A. That is correct."

Although the evidence may be more persuasive in the present case than in the DeHart case, nevertheless, we see no sufficient reason to disturb the findings and determination of the Board. It is common knowledge among highly trained professional and business people that when new opportunities are presented, changes of residence and of domicil may result. But that the respondent in the present case frankly stated his willingness to consider, hypothetically, advantageous and future business possibilities, is not sufficient to offset his positive statement that Detroit is his home; that he intends to return there if and when he becomes disemployed by the government; or to offset the equally convincing proof of intention to maintain his state allegiance while engaged in federal service, which results from the fact that he has maintained his status as a registered voter and "has ever since voted in the elections and primaries there." As we said in the Sweeney case, the rendering of government service in the District of Columbia, which was set apart especially for the purposes of the national government, should not too casually be "visited with the penalty of severing state allegiance or making it dubious." Neither should abandonment of domicil be held to have resulted unless the federal employee "gives clear evidence of his intention to forego his state allegiance." [3]

Affirmed.

---

[3] Sweeney v. District of Columbia, 72 App.D.C. 30, 113 F.2d 25, 32, 129 A.L. R. 1370, certiorari denied, 310 U.S. 631, 60 S.Ct. 1082, 84 L.Ed. 1402.