## BEEDY v. DISTRICT OF COLUMBIA.

### No. 7922.

United States Court of Appeals for the District of Columbia.

Argued Feb. 12, 1942.

Decided March 16, 1942.

Mr. Warren E. Magee, of Washington, D. C., with whom Mr. Carroll L. Beedy, of Washington, D. C., also entered an appearance, for petitioner (appellant).

Mr. Glenn Simmon, Asst. Corp. Counsel, D. C., with whom Messrs. Richmond B. Keech, Corp. Counsel, D. C., and Vernon E. West, Principal Asst. Corp. Counsel, D. C., all of Washington, D. C., were on the brief, for respondent.

Before GRONER, Chief Justice, and VINSON, and EDGERTON, Associate Justices.

GRONER, C. J.

This is an appeal from a decision of the Board of Tax Appeals of the District of Columbia sustaining, as against appellant, the assessment of an income tax for the year 1939.

The ground of the decision is that he was domiciled in the District of Columbia on December 31st of that year. The assessment was made under "An Act To provide revenue for the District of Columbia," etc., approved July 26, 1939, 53 Stat. 1085, D.C.Code 1940, § 47—1501 et seq. The applicable provision is: Sec. 2(a) *"Tax on Individuals.*—There is hereby levied for each taxable year upon the taxable income of every individual domiciled in the District of Columbia on the last day of the taxable year a tax at the following rates: * * *"

The single question is: Was appellant domiciled in the District of Columbia in the year 1939?

The facts are all undisputed and are as follows. Appellant is a lawyer, is unmarried, and was born in the State of Maine. Since 1907 he has publicly and privately claimed his domicile in the City of Portland in that State. He was elected to Congress in the fall of 1921 and served until January 1, 1935. At the time of his election, he occupied an apartment in Portland, where he maintained his mother. Subsequently, by reason of her illness and the necessity of providing additional accommodations, he changed his residence into another and larger apartment, which he furnished and in which he lived until his mother's death in August, 1934. He then gave up the apartment and rented a room in a private home in Portland, in which he lived until the fall of 1936, when he removed with his furniture to another location in Portland, where he has ever since maintained a room and a part of his wardrobe for his personal use, and which he at all times since has claimed and intended as his domicile. He owns a farm of 150 acres in Maine, which he purchased in 1925 or 1926 for a summer home. He pays all applicable taxes in Maine, including a poll tax. He is an enrolled voter in Ward 5 of Portland, where he regularly casts his vote. In January, 1935, appellant ended his congressional career, and in the fall of that year he made a professional connection with a law firm located in the District of Columbia. His purpose, definitely expressed at the time, was to enjoy for a period of four or five years the opportunity to share in the larger professional fees paid in the District, hoping within that period to re-establish his finances and return to Maine with something for his old age. He stated this purpose in 1936 in a public address to his friends and neighbors. At all times since he began his practice of the law in the District, his intention has been to remain in Washington for a limited time only—at the longest for ten years—and then, having accomplished his objective or not, to bring to a close his professional activities here and spend the remainder of his life in his home State. Ever since his association with the local law firm he has occupied, while in Washington, an apartment equipped with his own furniture at Stoneleigh Court, in the District.

It was stipulated at the hearing that during all of the time that appellant was a member of Congress, that is until January 1, 1935 he was domiciled in Maine and was a citizen of that State, and the Board found as a fact that thereafter, at all times, appellant desired his domicile to be in the State of Maine and not in the District of Columbia. But his intention in this respect was held not to be enough.

The Board has a formula of its own which it applies in determining in any given case whether a change of domicile has been effected, and holds that it has been whenever the subject (1) is a free agent, (2) is physically present in the new jurisdiction (the District), and (3) has an intention to reside therein for an indefinite period of time. On this basis, the Board held that when appellant settled in the District in 1935 and commenced the practice of law, he thereby evinced an intention to reside in the District "for an indefinite period of time", as the result of which he lost his domicile in Maine. In the opinion below the Board said: "While it is true that some of the textwriters and courts declare that intention to reside permanently in the new jurisdiction is essential to the acquisition of a domicile of choice therein, a careful reading of such authorities and a consideration of others of equal, if not of greater weight, shows that the term 'permanent' and 'indefinite' are used interchangeably or that the requirements of a new domicile are met if there is, in the mind of the subject, an intention to reside either *permanently* or *indefinitely*."

Prior to the Board's decision in this case we had decided Sweeney v. District of Columbia.[1] That controversy turned on a different tax statute, but substantially the same domiciliary question involved here was involved there. The Board recognized that under our definition of domicile in the Sweeney case, if applicable, the decision here would have had to go in favor of appellant, but thought that what we had said applied only to persons brought into the District of Columbia by federal employment and did not apply to one accepting for the time being private employment in the District. In the Sweeney case the position of the District was the opposite of this,

---

and it was insisted that there was no difference in federal and private employment, except as it might bear factually upon the existence of domiciliary intention. To this we said only that the question was not in the case and should not be, as it was not, then decided. Since it is now raised, we do not say that the question of domicile as between federal employees and private employees may not in some circumstances involve a different problem. But after all, the problem is not one of principle, but rather of measure of proof. In either case, the question must be answered by the application of certain rules established by the courts, state and federal, to determine where a man's home is. And certainly the love of home—deep rooted and abiding—beats as surely in the bosom of the private citizen as in the bosom of the public official. That this is so, is the saving principle of our government. For, as George Eliot has said with exquisite imagery: "A human life should be well rooted in some spot of native land where it may get the love of tender kinship for the face of the earth, for the sounds and accents that haunt it, a spot where the definiteness of early memories may be inwrought with affection, and spread, not by sentimental effort and reflection, but as a sweet habit of the blest".

Appellant came to the District in the federal service and admittedly retained during all of that period his Maine citizenship. He remained after his federal service under the circumstances we have recounted. The question in his case, then, is whether in remaining he acquired, notwithstanding his constant intention not to do so, a domicile in the District of Columbia and lost, contrary to his will and intention, his domicile in the State of his birth.

■ After our decision in the Sweeney case, we applied the rule of domicile announced there in two cases originating under the statute we are now considering.[2] These cases, like the Sweeney case, involved domiciliary status of federal employees. They went to the Supreme Court on certiorari. District of Columbia v. Murphy, 313 U.S. 556, 61 S.Ct. 1103, 85 L.Ed. 1517; District of Columbia v. De Hart, 313 U.S. 556, 61 S.Ct. 1104, 85 L.Ed.

1518. The opinion of that Court was delivered in December, 1941.[3] The view as to domicile taken by the Supreme Court and the view previously expressed by us differed in respect to the burden of proof. We had held that the evidence of intention of a change of domicile must be clear and unequivocal; in other words that strong evidence was required to overcome the presumption against a change. In the Murphy case the Supreme Court placed the burden upon the individual quartered in the District to establish domicile elsewhere to escape the tax. Following this ruling, as of course we do implicitly, the question here is whether, in the facts we have stated, appellant, concededly a citizen of Maine up to the year 1935, has shown the "fixed and definite intent to return and take up his home there" which the Supreme Court has said in the Murphy case is necessary to retain his Maine domicile.

■■ The Board reached a conclusion adverse to appellant, entirely on the theory that, having stated his intention to remain and practice law in the District of Columbia for four or five years and in no case for more than four or five years longer, he had thereby left the time of his return to Maine uncertain and indefinite. Based on this, the Board concluded appellant had only a "floating" intention to return and live in Maine, and held that this sort of intention did not prevent the acquisition of a new domicile acquired as the result of his four years of actual living in the District. Not only is the conclusion wholly unsupported by any evidence, but it is contrary to the law laid down by us in the Sweeney case and by the Supreme Court in the Murphy case. We said in the former that there must be a conjunction of physical presence and animus manendi in the new location to bring about a domiciliary change. And likewise, the Supreme Court, in the latter, held that one in government employment does not acquire a domicile here simply by coming into the District to live "for an indefinite period of time". [314 U.S. 449, 62 S.Ct. 309, 86 L.Ed. ——.] This is no more than the recognition of the rule, again and again approved by the Supreme Court, that to effect the change there must be "the absence of any present

---

[2] District of Columbia v. Murphy, 73 App.D.C. 347, 119 F.2d 451; District of Columbia v. De Hart, 73 App.D.C. 345, 119 F.2d 449.

[3] 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. ——.

intention of not residing there permanently or indefinitely". Gilbert v. David, 235 U.S. 561, 569, 35 S.Ct. 164, 167; 59 L.Ed. 360; Williamson v. Osenton, 232 U.S. 619, 624, 34 S.Ct. 442, 58 L.Ed. 758. And this rule applies whatever the motive inducing the change.[4]

The Board relied largely on the language of Professor Raleigh Minor in his Conflict of Laws (§ 56). But there is nothing there to sustain the Board's conclusion, for what Mr. Minor says is that there must be, to bring about the change, a fixed and definite purpose to remain in the new location permanently or at least for an unlimited or indefinite time, without "any definite intention of ultimate removal". In this case the evidence shows, not that appellant intended to remain in the District permanently, or indefinitely, but the contrary. Indeed, there is no claim of a lack of abiding intention to return to his home in Maine, but an actual finding of that constant purpose.

In the Murphy case the Supreme Court, while declaring the impracticability of devising a formula applicable in all cases, nevertheless set down certain factual considerations which might be weighed in determining the question of intent to return ultimately to one's State of origin. The pattern thus drawn fits appellant's case almost perfectly. For the conceded facts show that he had "kept" and had not "burned" his bridges in coming into the District; that a little while after establishing a law practice in Washington, he had said to the people of Portland, among whom he had lived and who had honored him with political office: "I want you to know that I am not leaving my home, that I am still one of you"; and that he had repeated that declaration from year to year in the pages of "Who's Who". True to his word, he returned to Portland several times a year and regularly during his summer vacations. He did "retain a place of abode" in Portland. He did have "investments in local property". What his "religious" affiliations were the record does not disclose, but it does show that he retained his political affiliations and regularly returned to vote in the elections. Enough has been said to make obvious that Maine had always been his "family seat" and that he was not "a bird of passage" there, but that he intended at the beginning and in the end to return and "pick up the threads" of long and "close association" and in his absence from home to assume the responsibilities of citizenship in the payment of all taxes assessable against him there.

Of appellant's good faith, nothing has been urged or suggested, and if we accept his statements of intention made long before an income tax was even thought of in the District of Columbia and consider them in the light of events as we know them from the record, they demonstrate in act and thought and deed the ever present purpose to return to his home to live among the people he had always known and ultimately to be buried in the soil of his native State. We, therefore, hold that appellant is domiciled in Maine and not in the District of Columbia.

Reversed.

---

[4] See cases cited in footnote 6 in the Murphy case, and see also Anderson v. Watt, 138 U.S. 694, 706, 11 S.Ct. 449, 34 L.Ed. 1078; Gilbert v. David, 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360; Williamson v. Osenton, 232 U.S. 619, 624, 34 S.Ct. 442, 58 L.Ed. 758; In re Dorrance's Estate, 115 N.J.Eq. 268, 170 A. 601; Berry v. Wilcox, 44 Neb. 82, 62 N.W. 249, 48 Am.St.Rep. 706; Hayes v. Hayes, 74 Ill. 312.