John A. ALEXANDER, Jr., Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 8032.

District of Columbia Court of Appeals.

Argued Sept. 18, 1974.

Decided Feb. 24, 1977.

Peter H. Wolf, Washington, D. C., with whom Ronald Kovner, Washington, D. C., was on the brief, for appellant.

Kenneth A. Pels, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, and Henry E. Wixon, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KELLY and GALLAGHER, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

This is an appeal from a judgment denying a refund of income taxes paid to the District of Columbia under protest for the years 1967–1971 in the aggregate amount of $2,566.60, and raises the sole question of whether the trial court erred in finding that appellant was domiciled in the District in such years and accordingly subject to its income tax act. D.C.Code 1973, § 47–1567b.

Having found that appellant was domiciled here on the last days of the taxable years in question, the court concluded that his status for tax purposes was that of a "resident" as the term is defined in D.C. Code 1973, § 47–1551c(s), the pertinent provision of which is:

> The word "resident" means every individual domiciled within the District on

the last day of the taxable year, and every other individual who maintains a place of abode within the District for more than seven months of the taxable year, whether domiciled in the District or not. . . .

The taxpayer (appellant) was born in the District and lived here with his parents until 1966, except for temporary absences as a student in Seattle attending the University of Washington, and on military duty with the Air Force. After several years of employment in the Naval Research Laboratory here as an electronics engineer, he left his parents' house in July 1966, when he successfully applied for employment at a Navy shore establishment in Yokosuka, Japan. His employment contract was for three years and was renewed by the taxpayer for an additional two-year term. Throughout this five-year period (1966–1971), the taxpayer rented and lived in a private residence in Japan and returned to the District only once—for the purpose of attending the funeral of his father.

Upon learning in 1970 that he was eventually to be transferred to Hawaii, the taxpayer, in filing his federal return, requested the Internal Revenue Service to send the 1971 forms to his mother's address in the District because he was uncertain what his new address would be. Because of a reduction in force, however, the transfer to Hawaii never materialized. As there was no opportunity to continue his job in Japan when his contract expired, he applied to his former station, the Naval Research Laboratory in the District of Columbia for reemployment, and was hired. From June through August of 1971, appellant took administrative leave without pay specifically to seek employment in the Pacific area, but because of a hiring freeze was unsuccessful. He returned to his mother's residence in Washington in September, 1971, to avail himself of the one-year employment contract offered him by the Naval Research Laboratory.

Soon after his return, agents of the District government asserted that he was lia-ble for unpaid taxes for the years 1967, 1968, 1969, and 1970.[1] He paid these taxes under protest, contending that he was a domiciliary of Japan, not the District, in such years.

Although there is evidence to support the judgment of the trial court, neither the government nor the taxpayer argues that its conclusion is binding upon us. The record discloses no conflict of testimony with respect to the relevant facts—the ultimate result hinging upon their legal significance.

In dealing with a similar record, Judge Rutledge correctly observed:

We do not consider the Board's finding conclusive. Domicile is a compound of fact and law. When there is no question concerning the applicable law and conflict concerns only the facts, the Board's determination is conclusive if supported by substantial evidence. But where, upon admitted or undisputed facts, the decision turns on controverted legal principles, it is reviewable. Here there is no dispute as to the essential facts. The conflict relates only to their legal effect. That is true though opposite inferences are drawn as to petitioner's intent. The difference is not as to what he intended in fact, but as to whether that intent can be given the legal effect which he claims for it. The Board's decision, therefore, is reviewable. [*Sweeney v. District of Columbia*, 72 App.D.C. 30, 32, 113 F.2d 25, 27, *cert. denied*, 310 U.S. 631, 60 S.Ct. 1082, 84 L.Ed. 1402 (1940).]

The term "domicile", although not defined by Congress, has a generally accepted legal meaning for the place where a man lives. The Supreme Court observed in the leading case of *District of Columbia v. Murphy*, 314 U.S. 441, 455, 62 S.Ct. 303, 309, 86 L.Ed. 329 (1941):

The place where a man lives is properly taken to be his domicile until facts adduced establish the contrary. (Citations omitted.)

---

1. It was conceded that any claim for 1966 taxes was barred by the statute of limitations.

■ Thus, to prove that persons who have left their former dwelling places and have taken up residence in another state in order to accept work in the federal civil service are domiciled in their new location, the facts adduced must demonstrate that such persons "have no fixed and definite intent to return and make their homes where they were formerly domiciled". 314 U.S. at 454–55, 62 S.Ct. at 309; footnote omitted.

■ In the case before us, the taxpayer contends that when he left Washington to go to Japan he intended to stay there indefinitely and that the evidence in the record shows that the requisite intent of returning to this jurisdiction and resuming his domicile here was completely lacking. In supporting the trial court's holding to the contrary, the government cites not only the fact that after a five-year period the taxpayer did return to his old home, where he has been living with his mother ever since, but also such factors as the following:

The taxpayer rented housing in Japan rather than purchasing a house; never applied for Japanese citizenship or voted in a Japanese election; did not pay Japanese income taxes; and was never employed by a private Japanese enterprise; had no relatives in Japan; did not join Japanese civic or social organizations while living abroad; continued to own stock in a Washington utility company and property in nearby Maryland; registered to vote in the District in 1964 and 1972, and generally used his military address for receiving correspondence posted to Japan rather than the address of his rented quarters. It also points out that on his first passport application, the taxpayer stated that his stay in Japan was for an estimated period of three years.

The trial court also deemed as evidence of an abiding intention to retain the District as his home, the maintenance by appellant of two accounts in Washington banks; a request that his 1971 federal tax forms be sent to his mother's address here; and the fact that he had left behind at his parents' house some personal items and had stored other personal property in nearby Maryland.

None of these factors, viewed separately or in combination, is conclusive. In *Gilbert v. David*, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360 (1915), where the Supreme Court found that the plaintiff established his domicile in Connecticut, despite the fact that he never voted in that state, left some of his personal property in Michigan for purposes of "holding his residence there", and often stated his preference for living in Michigan, it was held that a floating intention to return from whence one came will not defeat acquisition of a new domicile.

In attempting to bring his case within these principles, the taxpayer refers to other matters in the record as consistent with an asserted intent to remain in Japan indefinitely. Included in this enumeration were (1) his application for refund—later granted—for District of Columbia income taxes withheld in 1966 in which he gave Kanagawaken (Japan) as his domicile; (2) bank accounts in Japan and New York; (3) his attempts to obtain other employment in Japan when his original job ended; (4) calling cards listing his Japanese address; (5) his ability to read and speak Japanese; (6) his failure to avail himself of District of Columbia absentee voting privileges while stationed abroad; and (7) the fact that he never utilized his annual leave during the critical five-year period to return to Washington, except once—a brief visit to attend the funeral of his father.

The problem of determining whether employees of the federal government or of a foreign government, whose official duties necessitate their living in the District, are domiciled here has long been a source of litigation in the courts of this jurisdiction. At one time, if a civil servant maintained his voting privileges or some other indicia of allegiance to the state from which he had moved, the courts, relying on an asserted intention of returning after his government service ended, were inclined to treat him as a temporary resident and therefore free of domiciliary obligations. In reaching such a

result, the court in *Sweeney, supra,* relied heavily—as the government does in this case—on the presumption of continuity of domicile in the absence of convincing evidence of its abandonment.

But since the opinion of the Supreme Court in *Murphy, supra,* reversing two decisions of the United States Court of Appeals for this circuit,[2] which followed *Sweeney,* holding that a federal employee residing here and intending to remain indefinitely could be deemed a domiciliary, this court has attached great importance to the fact of physical residence here, unless there is clear evidence of a continuing intention to return to the former location. The trial court in the instant case inferred such an intent from the fact that the taxpayer had ventured to a foreign country of which he had little or no prior knowledge of its language, customs, or social relationships, and consequently concluded that his five-year residence in such a country did not overthrow the presumption of continuing domicile. In its opinion, the court failed to mention, and apparently overlooked two decisions of this court which point in an opposite direction, *viz., Rzeszotarski v. Rzeszotarski,* D.C.App., 296 A.2d 431 (1972), and *Alves v. Alves,* D.C.App., 262 A.2d 111 (1970).

In both these cases the validity of divorce decrees was challenged on the ground that neither plaintiff was domiciled in the District. As it has never been contended that the criteria determining domicile for divorce differ from those applicable to domicile for taxation, these opinions are relevant to the case at bar. In *Alves,* a British subject living in the District in order to perform his duties as an employee of the International Monetary Fund, was held to be a domiciliary. We rejected the contention that such status was inconsistent with

his British passport, his two-year nonimmigrant visa, his failure to apply for a resident visa, and the prospect of a return to England if, at some indefinite time in the future, the Fund refused to renew his series of two-year contracts. In *Rzeszotarski,* we went a step further by sustaining a claim of District domicile by a Polish citizen, who had entered the United States under a cultural-scientific exchange program for two years, even though subject to deportation in the event of failure to effectuate a change in immigration status prior to the expiration of the two-year period.

The matter before us presents the other side of the coin from *Alves.* Here, we are not asked to decide whether an alien who has come to the District on a two-year employment program and has taken no steps toward naturalization can be deemed to have abandoned his domicile, but whether a claim of abandonment of domicile by a District citizen living in a foreign country under a very similar contract can be upheld. In our opinion, the same guidelines that determined our *Alves* holding are equally applicable to the converse of the situation. As the facts of the two cases are not distinguishable in any relevant respect, we are unable to agree with the judgment of the trial court.[3]

*Reversed.*

GALLAGHER, Associate Judge, dissenting:

I would affirm the judgment of the trial court. A domicile once acquired is presumed to continue. *Dixon v. Dixon,* D.C. App., 190 A.2d 652 (1963); *Shilkret v. Helvering,* 78 U.S.App.D.C. 178, 138 F.2d 925 (1943). Here, the trial court concluded, in essence, that the evidence did not establish an intent, to remain in Japan permanently or indefinitely. *See Shilkret v. Helvering,*

**2.** *District of Columbia v. Murphy,* 73 App.D.C. 347, 119 F.2d 451 (1941), and *District of Columbia v. De Hart,* 73 App.D.C. 345, 119 F.2d 449 (1941).

**3.** *See also Adams v. Adams,* D.C.Mun.App., 136 A.2d 866 (1957), where a long-term resi-

dent of the District, who moved to an apartment in Arlington, Va., two years prior to beginning suit for divorce but continued to commute to his job in downtown Washington, was held to have abandoned District domicile.

*supra* at 180, 138 F.2d 925. Though the place of residence is generally taken to be the domicile, I think the evidence adequately supports the trial court's finding that, on this record, there was no change of domicile from the District of Columbia to Japan. Because this case involves essentially whether there was this change of domicile, I view *District of Columbia v. Murphy*, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329 (1941), relied upon by the majority as factually distinguishable and not controlling.[1]

I see no adequate reason to overturn the trial court's conclusion on appellant's domicile.

---

1. I also do not agree that our decisions in *Rzeszotarski v. Rzeszotarski*, D.C.App., 296 A.2d 431 (1972), and *Alves v. Alves*, D.C.App., 262 A.2d 111 (1970), are compelling authority here. The factual situations in those cases are so dissimilar to this case as to render them inapplicable.