## DISTRICT OF COLUMBIA v. PACE.

No. 117. Argued December 13, 1943.—Decided January 10, 1944.

*Mr. Glenn Simmon,* with whom *Messrs. Richmond B. Keech* and *Vernon E. West* were on the brief, for petitioner.

*Mr. Elmer E. Hazard,* with whom *Messrs. George H. Happ* and *Martin F. O'Donoghue* were on the brief, for respondent.

MR. JUSTICE JACKSON delivered the opinion of the Court.

Charles F. Pace came to the District of Columbia in 1913 from Florida, where he had theretofore been domiciled. His only purpose in coming was to enter the federal service. He became Financial Clerk of the Senate and served continuously until his death in the District in 1940. During these twenty-seven years he lived in boarding houses and in rented apartments and owned no real property in the District. At all times he maintained his registration and qualification to vote in the State of Florida and exercised that right either in person or by absentee ballot. His will, made in 1937, recited that he was "of the City of Washington, D. C." It was probated in Florida, and ancillary letters were granted in the District to the respondent executrix. District authorities, upon the premise that Pace was domiciled in the District, assessed an inheritance tax upon the transfer of certain jointly owned bank deposits within the District. Respondents paid the tax under protest and then appealed the assessment to the Board of Tax Appeals of the District on the ground that decedent was domiciled in Florida at the time of his death. The Board of Tax Appeals after hearing argument determined that decedent was domiciled in Florida, and ordered refund of the tax paid. The District appealed to the Court of Appeals, but before hearing this Court decided *District of Columbia* v. *Murphy,* 314 U. S. 441. The District thereupon moved to remand the

case to the Board of Tax Appeals for reconsideration in the light of the intervening decision. The motion was granted. Upon reconsideration the Board re-adopted the findings theretofore made but concluded that the decedent had not overcome the presumption, arising from maintaining a home in the District, that he was domiciled therein, and reversed its former ruling.

The Court of Appeals for the District of Columbia reversed. It accepted and applied our decision in *District of Columbia* v. *Murphy* and, weighing the facts in the light of its principles, concluded that the decedent was domiciled in Florida at the time of his death. The evidence before the Board of Tax Appeals took a wide range, and we do not think it is necessary to recite it in detail. As is usual in cases of contested domicile, it gave rise to conflicting inferences, and a decision either way would be supported by substantial evidence. Whether the Board's determination or that of the Court of Appeals should be deemed correct would depend upon the weight to be given to many different items of evidence, the credibility to be given to testimony, and the inferences to be drawn from many admitted events. We did not take this case to determine where Mr. Pace was domiciled. But the scope of review of decisions by the Board of Tax Appeals of the District of Columbia is important to the administration of the District's tax laws, and since that question was not reached or decided in *District of Columbia* v. *Murphy,* we granted certiorari in this case.

Congress has seen fit in certain of the District's tax statutes to make liability dependent upon domicile. In the District, where a large proportion of the population owe their presence to Government service and have the strongest motives for retaining their political connections with and domicile in the enfranchised community from which they came, this test of taxability is bound to give rise to innumerable and difficult conflicts. These the

Board of Tax Appeals is authorized in the first instance to resolve.

The provisions for review of Board of Tax Appeals decisions present complexities almost as baffling as the test of taxability itself. Section 4 (a) of the Act creating the Board of Tax Appeals for the District of Columbia provides that its decisions may be reviewed by the Court of Appeals and that upon such review the court "shall have the power to affirm, or if the decision of the Board is not in accordance with law, to modify or reverse the decision of the Board, with or without remanding the case for hearing, as justice may require." 52 Stat. 371, D. C. Code (1940) § 47–2404 (a). Had this been all, a strong case would be made for applying the rule of finality applicable to the Federal Board of Tax Appeals, now the Tax Court of the United States. *Dobson* v. *Commissioner, ante,* p. 489. However, the same organic act contains another and qualifying provision that is not to be found in the acts creating the Tax Court: "The findings of fact by the Board shall have the same effect as a finding of fact by an equity court or a verdict of a jury." 52 Stat. 371, D. C. Code (1940) § 47–2404 (a). Since findings of fact by an equity court and the verdict of a jury have from time immemorial been subject to different rules of finality it is puzzling to know what the draftsmen of this section meant by including both in the one rule for reviewing Board of Tax Appeals findings.

This statute was enacted in May, 1938. The law at that time as to the review of findings of fact in equity was, as stated by Mr. Justice Brandeis for the Court, "in equity, matters of fact as well as of law are reviewable . . ." *Virginian Ry. Co.* v. *United States,* 272 U. S. 658, 675. Findings of fact by the trial judge of course were presumptively correct and were accepted by reviewing courts unless clearly wrong. *Butte & Superior Copper Co.* v. *Clark-Montana Realty Co.,* 249 U. S. 12, 30. This rule, however,

did not deny power to the Circuit Court of Appeals to review facts, but rather went to the weight to be accorded to the findings of a lower court and had special pertinence where credibility of witnesses was involved. This Court had a well-settled rule that "when two courts have reached the same conclusion on a question of fact, their finding will not be disturbed unless it is clear that their conclusion was erroneous." *Baker* v. *Schofield,* 243 U. S. 114, 118. Such a rule would have no support in reason if the second court could not make its findings as a result of its own judgment.

The statute therefore authorizes review of findings of fact of the Board of Tax Appeals of the District of Columbia, subject to the admonition that they are to be undisturbed unless clearly wrong, if the findings are given the effect of findings of fact by an equity court. If the effect of the jury verdict, provided for in the same sentence, is to prevail, the review is much more restricted. The question as to which of the inconsistent provisions shall govern arises in a local statute confined in its operation to the District of Columbia. "We will not ordinarily review decisions of the United States Court of Appeals, which are based upon statutes so limited or which declare the common law of the District." *Del Vecchio* v. *Bowers,* 296 U. S. 280, 285. Cf. *American Security & Trust Co.* v. *District of Columbia,* 224 U. S. 491; *United Surety Co.* v. *American Fruit Product Co.,* 238 U. S. 140. Where a local statute contains a conflict on its face as patent and as irreconcilable as this, where either choice seems equally supportable, we cannot say that the Court of Appeals commits error in assuming its review of the Board of Tax Appeals decision to be entitled to the scope of a review of an equity court.

After the Board of Tax Appeals statute, Federal Rule of Civil Procedure No. 52 was adopted, effective September 1, 1938. It provided as to all actions tried upon the

facts without a jury: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." This general rule, even if it were thought to modify the previous rule as to review of findings of fact in equity cases, would hardly supersede a special statutory measure of review applicable to a special and local tribunal.

We conclude, therefore, that the Court of Appeals has power to review decisions of the Board of Tax Appeals as under the equity practice in which the whole case, both facts and law, is open for consideration in the appellate court, subject to the long-standing rule that findings of fact are treated as presumptively correct and are accepted unless clearly wrong. The Court of Appeals therefore had power to set aside the determination of the Board of Tax Appeals if convinced, as it was, that the Board was clearly wrong. We are not called upon to separate factual from legal grounds of decision and to determine if reversal of the Board of Tax Appeals by the Court of Appeals could stand on questions of law alone. The judgment therefore is

*Affirmed.*

MR. JUSTICE BLACK and MR. JUSTICE RUTLEDGE took no part in the consideration or decision of this case.