**BUTLER et al. v. DISTRICT OF COLUMBIA.**

No. 8922.

United States Court of Appeals
District of Columbia.

Argued Dec. 12, 1945.

Decided Jan. 14, 1946.

Mr. Henry F. Butler, of Washington, D. C., for petitioners.

Mr. Harry L. Walker, Assistant Corporation Counsel, District of Columbia, of Washington, D. C., with whom Mr. Vernon E. West, Corporation Counsel, District of Columbia, of Washington, D. C., was on the brief, for respondent. Mr. Richmond B. Keech, Corporation Counsel, of Washington, D. C., at the time the brief for the District was filed, also appears thereon.

Before GRONER, C. J., and CLARK and PRETTYMAN, JJ.

GRONER, C. J.

This is an appeal from a decision of the Board of Tax Appeals of the District of Columbia sustaining an assessment against petitioners of income taxes for the years 1939 and 1940.

The single question for decision is whether petitioners were "domiciled" in the District of Columbia in the two years in question.

The Board's findings of fact show that petitioner Henry F. Butler was born in Yonkers, New York, in 1896. In 1902 his father, Charles Henry Butler, was appointed official reporter of the Supreme Court and held that position until 1916, when he entered the practice of law in the District of Columbia. Petitioner during his minority lived in his father's home in Washington, or outside, in boarding schools or college. After graduation from Princeton, petitioner in 1921 married Estelle K. Butler (the other petitioner), and they have continued living together as husband and wife since that time. In that year petitioner Henry F. Butler made a contract with his father to manage the latter's farm properties in Maine, and went with his wife to that State for that purpose. In 1927 he entered Harvard Law School and graduated in 1930. His wife during this time taught at Boston University. In the autumn of that year he was admitted to the Massachusetts Bar and was thereafter associated with a firm of attorneys in Boston. During the Harvard period petitioner continued to manage the properties in Maine, and in 1932 acquired his father's holdings in that State, a portion of which he still owns. He had earlier purchased a dwelling in Maine, adjacent to the farm, which he and his wife still own and call home. In 1934, at the instance of his father, who was then seventy-five years of age, he took "leave of absence" from the Boston law firm and came to the District of Columbia to assist his father in his law practice. He has ever since remained in the District of Columbia and engaged in the practice of law. Petitioner testified, however, that when he accepted his father's invitation to assist in his law practice, he had very definite intentions not to establish a legal residence in the District of Columbia, but to continue to maintain his Massachusetts domicile. Upon leaving Massachusetts, petitioners shipped some of their furniture to the house in Maine and the remainder to the District of Columbia, where it was placed in storage pending their efforts to find a place to live. Petitioner continued to own and manage

the Maine farm properties until 1939, when he reduced his holdings to about 700 acres. Both petitioners voted and exercised all the rights of citizenship in Maine during the period 1923 through 1930. After 1930 (the Boston period) and through 1940 they were registered for voting and tax purposes as residents of Massachusetts, voted and paid income and other applicable taxes as citizens of that State. In 1938 they notified the proper Maine officials that they had become registered voters in Massachusetts and were no longer residents of Maine, and should accordingly be removed from the voting rolls of that State. And this was done.

Petitioners, from the time they came to Washington in 1934, to and including 1940, were careful at all times and in every appropriate public way to insist that Massachusetts, and not the District of Columbia, was their legal domicile. In their Federal income tax returns for the years 1934 through 1940 petitioners described themselves as legal residents of Cambridge, Massachusetts, temporarily residing in Washington, D. C., and in their Massachusetts income tax returns for the same period declared their home address as Cambridge, and their mailing address as Washington.

▮ Based on these findings the Board concluded that petitioners were domiciled in Maine in the period 1921-1927, and in Massachusetts in the period 1930-1934; that in 1934, when petitioner, in the circumstances we have mentioned, joined his father, and thereafter and during the years 1939-1940, practiced law in the District, he entertained no present, fixed intention of returning to Massachusetts, and that therefore he and his wife should be held to have abandoned their former domicile and likewise to have acquired domicile in the District of Columbia. As we shall presently point out, we think there is no proper basis for this conclusion.

The District of Columbia income tax statute,[1] the first ever enacted for the District, became effective in 1939. It imposes a tax on the income "of every individual domiciled in the District of Columbia on the last day of the taxable year." Petitioners paid the tax for the years 1939 and 1940 under protest, and within the appropriate time filed their appeal with the Tax Board, insisting they never were and are not now domiciliaries of the District. Upon rejection of their appeal they filed their petition in this court under provisions of the statute which authorizes us, upon review, to affirm or reverse.[2]

An examination of the record shows only the uncontradicted evidence of the two petitioners and sundry exhibits mostly in relation to petitioner Henry F. Butler's membership in various Bar Associations and clubs in and out of the District of Columbia.

It should be kept in mind that here we are confined to a consideration of the facts applicable alone to the two years 1939 and 1940. We think it manifest from the undisputed evidence that both petitioners were in 1939 and 1940 domiciliaries of the State of Massachusetts, and that in the period beginning with 1934, when petitioner Henry F. Butler took temporary leave of absence from his Boston law office to assist his father in Washington, to and including the year 1940, their established domicile in Massachusetts continued. At no time during that period did they have an intent or purpose to establish a domicile in the District of Columbia, neither did their presence in the District during this five year period nor their then acts and conduct show or tend to show a fixed purpose to remain in the District of Columbia for an unlimited or indefinite time, without any definite intention of ultimate removal. Gilbert v. David, 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360; Williamson v. Osenton, 232 U.S. 619, 624, 34 S.Ct. 442, 58 L.Ed. 758; Beedy v. District of Columbia, 75 U.S.App.D.C. 289, 126 F.2d 647; Pace v. District of Columbia, 77 U.S.App.D.C. 332, 135 F.2d 249, aff'd. 320 U.S. 698, 64 S.Ct. 406, 88 L.Ed. 408; Shilkret v. Helvering, 78 U.S.App.D.C. 178, 138 F.2d 925.

The evidence of petitioner and his wife, which is not contradicted in any respect, fairly shows that after his graduation from Princeton University, he decided to make

[1] D.C.Code, 1940, § 47—1501 et seq.

[2] District of Columbia v. Pace, 320 U.S. 698–703, 64 S.Ct. 406, 408, 88 L.Ed. 408; "We conclude, therefore, that the Court of Appeals has power to review decisions of the Board of Tax Appeals as under the equity practice in which the whole case, both facts and law, is open for consideration in the appellate court, subject to the long-standing rule that findings of fact are treated as presumptively correct and are accepted unless clearly wrong. The Court of Appeals therefore had power to set aside the determination of the Board of Tax Appeals if convinced, as it was, that the Board was clearly wrong."

his permanent home in Maine. That State had been his father's home for many years and his father's worldly possessions were mostly there. He continued there in the active management of his father's apple orchard and dairy farm until 1927, when he concluded to study law and entered Harvard University. In 1926 he and his wife had purchased a one hundred and fifty-acre tract in Maine, including a dwelling house, which he fully furnished and equipped for year-around occupancy, and during the Harvard period he continued to visit the farm property and to supervise its operation until 1932, when he purchased the orchard and farm from his father. But after his graduation in law he established himself and his wife in a home in Cambridge and began the practice of law in Boston. From 1930 to 1934 he and his wife, as the Board found, were inhabitants of Massachusetts, paid taxes as such and exercised the rights of suffrage as citizens and registrants of that State. When in 1934 he was persuaded by his father to join him in Washington, he retained a connection with the law office in Boston and maintained his citizenship in that State. In making his regular returns from year to year of his taxable income he certified invariably that he was an inhabitant of that State, resident in the Town of Cambridge, and was only temporarily in the District of Columbia.[3] On his arrival in Washington there was then no statute taxing income, but in all the years 1934 to 1939 there was an "intangible tax"—as to which petitioner, as a domiciliary of Massachusetts, was properly held not to be liable.

In 1938, petitioner, who had prior to that time been assessed for real and personal estate and poll taxes in Maine, notified the Maine Assessor that he and his wife were no longer citizens of that State, but were registered voters in Cambridge, Massachusetts, and therefore should be dropped from the voting list of residents in Maine. Petitioners thereafter, and including the years 1939 and 1940, continued to exercise their voting privileges in the State of Massachusetts.

The Tax Board, as we have seen, found that petitioners were legal residents in Maine from 1921 to 1930 and that in 1930 they changed their legal domicile from Maine to Massachusetts, and in that, as we have indicated, we agree. Our difference of viewpoint arises out of the fact that the Board held that the Massachusetts domicile was abandoned in 1934. The basis for this is the mere fact that petitioner in that year left Massachusetts for the District of Columbia, and continued there thereafter in the practice of law. It wholly disregards the admitted fact that petitioners continued to exercise their voting privilege and to pay their taxes, including taxes on their income, in Massachusetts, for all the years up to and including 1940, and that for all of these years they disclaimed in every possible way an intent or purpose to acquire domicile in the District of Columbia.

The applicable District law in like or nearly like circumstances has been announced by us in a number of cases. It is true that the majority of such cases involved persons temporarily resident in the District of Columbia under appointment or election to Federal office. But, as we said in Beedy v. District of Columbia, supra, while this difference may in some circumstances involve a different problem, the question, in each, is the measure of proof. In nearly every case the question must be answered by the proper application of rules established by the courts to determine where a man's home is; and the rule to be applied in the District of Columbia is to be found in Sweeney v. District of Columbia, 72 App.D.C. 30, 113 F.2d 25, 129 A.L.R. 1370; Beedy v. District of Columbia, supra; Pace v. District of Columbia, supra, and Shilkret v. Helvering, supra, and may be summarized in the short statement that mere absence from a fixed home, however long continued, cannot of itself work the

---

[3] Joint Appendix to Briefs, p. 24: "In 1934 my father, who was getting along in years, asked me to join him in the practice of law in Washington. I came to Washington in the spring of 1934 on leave from Warner, Stackpole and Bradlee, to look over the situation here and thereafter returned to Massachusetts to give the question more consideration. After taking everything into consideration my wife and I, the other petitioner, decided we would come to Washington for a trial of the proposition, though with no determination to remain here any protracted length of time. Accordingly, I arranged for leave from the office of Warner, Stackpole and Bradlee with the understanding that I could return at any time. That situation still exists with that office and I was told as recently as last summer that my position remained there and I could return there and occupy it at any time."

change. There must be the animus to exchange the prior domicile for another. Until the new one is acquired, the old one remains. These principles, the Supreme Court, this court and most courts have said, are axiomatic in the law upon the subject. Mitchell v. U. S., 21 Wall. 350–353, 22 L. Ed. 584; Gilbert v. David, supra; Williamson v. Osenton, supra; Anderson v. Watt, 138 U.S. 694, 707, 11 S.Ct. 449, 34 L.Ed. 1078; Appeal of Carey, 75 Pa. 201, 205; Price v. Price, 156 Pa. 617, 626, 27 A. 291; Hayes v. Hayes, 74 Ill. 312, 316; Bangs v. Inhabitants of Brewster, 111 Mass. 382, 385; Lindsay v. Murphy, 76 Va. 428, 430; Hairston v. Hairston, 27 Miss. 704, 717, 61 Am. Dec. 530; City of Hartford v. Champion, 58 Conn. 268, 20 A. 471; Cadwalader v. Howell, 18 N.J.L. 138, 144; Hegeman v. Fox, 31 Barb., N.Y., 475, 476; Town of Albion v. Village of Maple Lake, 71 Minn. 503, 74 N.W. 282; Di Brigida v. Di Brigida, 116 N.J.Eq. 208, 172 A. 505.

The House and Senate recently, in an effort to avoid the frequent revival of the question as to Federal officials and employees in the District of Columbia, passed an Act to the effect that domicile of such Federal officers and employees located in the District should be held to be in the State in which they have previously acquired a domicile, and which they expressly declare to be the State of their domicile and in which they pay taxes according to the laws of such State.[4] The statement is no more than an affirmance of the present law as declared by the Supreme Court and this court. And if it is desirable that those who temporarily come into the District to earn a living should be required to contribute their share of the expenses of its operation, there are examples enough in the statutes of some twenty-five of the States to accomplish this result, or a statute might be proper which requires the payment of a tax on income by those temporary District residents who claim domicile in one of the eighteen States in which there is no present income tax. But the subject is difficult in the reasonable and proper necessity of excluding from local tax exactions the members of Congress who in the nature of their work are required to maintain a home in the District as well as one in the State from whence they come, and accordingly the District is the sufferer.

In the circumstances, we have no alternative than to decide each case on its own facts, measured by the universal rule of domicile. And in the present case, on that basis, there is no ground on which to sustain the Board's conclusions.

Reversed.

---

[4] H.R. 534. So far as we are able to determine, the Bill is still in conference, or in process of being referred to conference.