## ELECTRIC STORAGE BATTERY CO. v. DISTRICT OF COLUMBIA.

### Nos. 8997, 8998.

United States Court of Appeals
District of Columbia.

Argued March 28, 1946.

Decided May 20, 1946.

Mr. William P. Cairo, of Philadelphia, Pa., pro hac vice, by special leave of Court, with whom Mr. Edward J. Dwyer, of Detroit, Mich., was on the brief, for petitioner.

Mr. Harry L. Walker, Assistant Corporation Counsel, District of Columbia, of Washington, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, both of Washington, D. C., were on the brief, for respondent. Mr. Richmond B. Keech, formerly Corporation Counsel, of Washington, D. C., entered his appearance for respondent when the case was docketed.

Before GRONER, C. J., and EDGERTON and PRETTYMAN, Associate Justices.

GRONER, C. J.

These are two petitions for review of two decisions of the Board of Tax Appeals for the District of Columbia.[1] There is no material difference in the cases and both were properly submitted on a single brief and argument. In both the Board sustained the action of the Assessor in disallowing in part refunds of income taxes for the years 1941 and 1942 claimed to have been overpaid under the District In-

[1] See—District of Columbia v. Pace, 320 U.S. 698–703, 64 S.Ct. 406, 408, 88 L. Ed. 408: "We conclude, therefore, that the Court of Appeals has power to review decisions of the Board of Tax Appeals as under the equity practice in which the whole case, both facts and law, is open for consideration in the appellate court, subject to the long-standing rule that findings of fact are treated as presumptively correct and are accepted unless clearly wrong. The Court of Appeals therefore had power to set aside the determination of the Board of Tax Appeals if convinced, as it was, that the Board was clearly wrong."

come Tax Act.[2] The total amount involved on this appeal is approximately $1200.

Petitioner is a New Jersey corporation with its principal office and factories in or near Philadelphia. Its business is the manufacture and sale of electric storage batteries, parts and accessories, and it maintains a branch office, but no warehouse or stock of merchandise, in the District of Columbia.

In 1940 petitioner entered into a written contract with E. J. Payne to act as its wholesale distributor in the District of Columbia. The contract stipulated that petitioner would sell and Payne would buy batteries, parts and battery service equipment "f. o. b." petitioner's shipping points, at prices generally applicable to petitioner's "wholesale distributors" as fixed from time to time, and would sell the same in accordance with petitioner's general sales policies. By the terms of the contract Payne was not to transact business or make contracts with third persons in behalf of petitioner, nor represent petitioner, nor act in its stead. In short, the arrangement contemplated a relationship only of buyer and seller as the result of which the former would have exclusive distribution or selling rights in the District of Columbia. To carry this plan into effect petitioner's branch office in the District would receive Payne's orders and transmit them for acceptance to the main office in Philadelphia. The merchandise was then shipped prepaid and settlement for the purchase price was made on invoices furnished buyer from time to time. When the goods were shipped to Payne petitioner sent him shipping memoranda which contained notations to the effect that petitioner was not liable for damage to goods in transit, that its responsibility ceased when it delivered the material in good order to the transportation company, and that all claims for loss or damage in transit should be made against the carrier. The contract between the parties was divided into two sections. One, designated "Transportation Arrangements," contained inter alia the following:

"1. BATTERIES.

"The Battery Company (petitioner) will prepay transportation on all complete batteries to the Wholesale Distributor's main office city or branch city except when quantities are in lots of from 1 to 24 which will be on a 'collect' basis. All shipments are made f. o. b. the Battery Company's shipping points. The Battery Company reserves the right to make all prepaid shipments by most economical carrier, method and routing, and to elect shipping point."

"4. CLAIMS AGAINST CARRIERS.

"All Exide materials are shipped f. o. b. the Battery Company's (petitioner's) shipping point regardless of transportation costs being 'prepaid' or 'collect.' Claims for shortages, breakage or damage in transit must be made by the Wholesale Distributor as consignee. The Battery Company will assume no responsibility for them."

In all of the sales here involved the goods were transported by an independent motor truck operator under a contract with petitioner.

Petitioner in its returns for the calendar years 1941 and 1942 reported all sales made by it to Payne as "gross income from sources within the District of Columbia,"

---

[2] Act of July 26, 1939, § 2, ch. 367, tit. II, 53 Stat. 1087, D.C.Code (1940 ed.) § 47—1502(b) provided: "There is hereby levied for each taxable year upon the taxable income from District of Columbia sources of every corporation, whether domestic or foreign * * * a tax at the rate of 5 per centum thereof."

Sec. 4(b) of that Act, D.C.Code (1940 ed.) § 47—1504(b), provided: "In the case of any corporation, gross income includes only the gross income from sources within the District of Columbia."

This section was amended by Act of June 22, 1942, ch. 433 § 1, 56 Stat. 376,

D.C.Code (1940 ed.) Supp. IV, § 47—1502(b), effective with respect to taxable years beginning after December 31, 1941, and now provides: "That income derived from the procurement of orders for the sale of personal property by means of telephonic communication, written correspondence, or solicitation by salesmen in the District where such orders require acceptance without the District before becoming binding on the purchaser and seller and title to such property passes from the seller to the purchaser without the District is not from District of Columbia sources: * * *."

but in September, 1943, petitioner filed with the Assessor two claims for refund. The claims were based upon the conclusion that the sales as shown in the original returns were erroneously assigned as from sources within the District of Columbia. The Assessor allowed refunds slightly in excess of $300 and disallowed the balance. The disallowances were predicated on the fact that since petitioner admittedly agreed to pay and did pay the cost of transportation, title to the merchandise passed only after delivery within the District of Columbia, and accordingly was income from District of Columbia sources.

On this appeal petitioner insists that the decision of the Board is wrong because the merchandise in question, having been sold to Payne f. o. b. shipping point, with an agreement that the risk of loss in transit should be assumed by Payne, title passed when delivery was made to the carrier, and that this result is not affected by the fact that petitioner agreed to pay the costs of transportation and reserved the right to select the carrier.

It will therefore be seen that the single question for determination is whether the title to the merchandise passed within or without the District of Columbia.

The Tax Board in its opinion held that the actual sales (as distinguished from the passage of title) were made in the District of Columbia. While we do not regard that fact, if it is a fact, as affecting the result, we are nevertheless of opinion that in this respect the Board is wrong. The stipulation of facts, as found in the record, made between petitioner and the District of Columbia is convincing that all sales were consummated in Philadelphia. The stipulation recites that—

"Petitioner maintains a sales branch office at 1819 'L' Street, N. W., Washington, D. C. All orders obtained by said District Office are subject to acceptance and approval by the principal office in Philadelphia. When accepted and approved, said orders are filled by the principal manufacturing plants in Philadelphia and are shipped from said plants f. o. b. factory or f. o. b. destination, as the case may be. The Company does not maintain a stock of goods in the District either in its own name or in the name of others."

The Board construed the quoted language as applying to present conditions rather than as to those existing in 1941 and 1942. But we think this a tortured construction. The apparent purpose of the stipulation was to agree upon material incidents as of the time of the events out of which the suits arose. And the language of the stipulation is only susceptible of this conclusion.

We are thus brought back to the question where title to the goods passed. The Board's decision that it was in the District is bottomed upon the fact that under the contract petitioner agreed to "prepay transportation on all complete batteries." And this fact the Board thought brought into operation Rule 5 of § 19 of the Uniform Sales Act,[3] which reads as follows:

"If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or [have] reached the place agreed upon."

But we think this does not follow. The presumption which Rule 5 creates is declared by the District Statute not to apply in any case in which "a different intention appears." Hence, if the facts showed nothing more than a contract of purchase of goods in Philadelphia for delivery in Washington, seller to pay the cost of transportation, Rule 5 would apply and the Board's decision would be correct. Equally, if the terms of purchase are delivery "f. o. b." shipping point, and no more, there can be no doubt that title would pass at point of delivery to the carrier, for by the use of the term "f. o. b." the presumption is that the property in the goods passes at that time and place.[4] The present case does not clearly fall within either of these

---

[3] D.C.Code (1940 ed.) § 28—1203.

[4] Williston on Sales (2 ed.) Vol. 1, p. 602.

precise situations, hence neither the presumption created by Rule 5 of the Uniform Sales Act nor the accepted connotation of the term "f. o. b." can, of itself, control the result.[5] The prepayment of freight and the use of the term "f. o. b." are only two of the facts to be given consideration in determining the time and place at which the parties intended to pass title.[6] The answer, as we have seen, must be found in other facts showing the actual intention of the parties. Here there is an abundance of other facts which convinces us that it was always intended that title would pass upon delivery to the carrier, for the contract not only provided for a sale "f. o. b." shipping point, but specifically provided that " * * * materials are shipped f. o. b. the Battery Company's shipping point regardless of transportation costs being 'prepaid' or 'collect.' " This language clearly portrays the fixed and definite purpose of the parties to make the title transfer period consistent with f. o. b. delivery and destroys any presumption arising out of payment of carriage by the seller. This is further buttressed by the provision of the contract that once delivery is made to the carrier, loss or damage thereafter sustained is solely for the account of the buyer. The agreement of the seller to pay the freight, in these circumstances, amounts to no more than a method of adjusting the price, or an inducement to secure the sale. Certainly it is not of itself sufficient to contradict the expressed purpose of the parties that the goods are sold f. o. b. shipping point regardless of who pays the freight, that the seller's responsibility "ceases upon delivery" to the carrier and that the risks of transportation must be borne by the buyer. Enough has been said to show that the provisions of the contract, which we have previously set out, demonstrate that transfer of title occurred outside the District of Columbia.

Reversed.

---

[5] United States v. R. P. Andrews & Co., 207 U.S. 229, 241, 28 S.Ct. 100, 52 L.Ed. 185; In re Globe Varnish Co., 7 Cir., 114 F.2d 916, 918.

[6] Brown Lumber Co. v. Commissioner of Internal Revenue, 59 App.D.C. 110, 35 F.2d 880.