## BECKHAM et al. v. DISTRICT OF COLUMBIA.

### No. 9470.

United States Court of Appeals
District of Columbia.

Argued June 3, 1947.

Decided Sept. 15, 1947.
Writ of Certiorari Denied Nov. 17, 1947.
See 68 S.Ct. 166.

EDGERTON, Associate Justice, dissenting.

———◆———

Mr. Leslie C. Garnett, of Washington, D. C., with whom Mr. Samuel F. Beach, of Washington, D. C., was on the brief, for petitioners.

Mr. George C. Updegraff, Assistant Corporation Counsel, of Washington, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, both of Washington, D. C., were on the brief, for respondent.

Before STEPHENS, EDGERTON, and CLARK, Associate Justices.

CLARK, Associate Justice.

This case is here on petition for review of a decision of the Board of Tax Appeals for the District of Columbia. Pending the review this court decided Collier v. District of Columbia, App.D.C., 161 F.2d 649. Therein we held that under the uncontradicted evidence Collier had had, during an extended residence in the District of Columbia while engaged in Government service, a fixed intention ultimately to return to New Hampshire, his former abode, only the date of his return being indefinite, and that therefore in view of the ruling in District of Columbia v. Murphy, 1941, 314 U. S. 441, 62 S.Ct. 303, 86 L.Ed. 329, Collier had no domicile in the District of Columbia for purposes of local income taxation.

In the instant case the Board found upon the evidence before it that the petitioners Clifford G. and Mabel V. Beckman "have not at all times since coming to the District of Columbia had a fixed and definite intention to return to Texas and make their home therein, and on December 31, 1940, they were residents of the District of Columbia." Accordingly the Board decided that the Beckhams, having been domiciled in the District on December 31, 1940, were liable for the District of Columbia income tax for that year.

In view of District of Columbia v. Pace, 1944, 320 U.S. 698, 64 S.Ct. 406, 88 L.Ed. 408, the sole question before us, except that arising from a contention noted below of counsel for the District against the Collier decision, is whether or not under the evidence before the Board its finding is clearly wrong. On the oral argument in this court counsel for the District stated that if the decision in the Collier case is to stand, it controls the instant case and requires, accordingly, reversal of the Board's decision. Counsel contended, however, that the Collier case was wrongly decided and urged reversal or modification of the decision therein.

We have reexamined the Collier decision. We find no warrant in reason or authority for reversal or modification thereof.

We set forth in the margin a resume of testimony in the Collier case and in the in-

stant case.[1] Comparison of this testimony shows that the cases substantially parallel each other in respect of both delineation of circumstances bearing upon domiciliary intent and direct statements of the parties as to their intent—except in one respect. In the Collier case no questions were, apparently, asked of Collier as to what he might do in respect of residence in the District of Columbia in the future, were named contingencies to confront him. In consequence his testimony to intent was merely that he intended to return to New Hampshire when his connections with the Government were severed. Beckham, in addition to testifying that he and Mrs. Beckham had claimed Fort Worth as their residence ever since they had been in Washington, also testified that he intended, with his wife, to return to Fort Worth, to practice law at the end of his Government service in the District, i. e., upon his retirement—for which at his present age of sixty-five he is now eligible, though he is not compelled to retire. But in answer to questions by counsel for the District Beckham testified also:

"Q. If you are forcibly retired prior to reaching the age of 76, and you were offered a position in the District of Columbia or in this area at a like salary, would you be inclined to accept that job? A. Well, of course, the salary—you say a like salary. I would add to that the small amount of retirement that would make it possible for me to live somewhere for a while, and if the combination were enough that I figured it would be sufficiently better than what I would anticipate I could do in Texas, I might take it."

---

[1] In the Collier case the testimony was to the following effect: Collier was a Civil Service employee in the Navy Department who had come to the District in 1938 from Porthmouth, New Hampshire, where he had theretofore lived. He resided in the District in a rented apartment. He owned no real estate or other property in the District except two savings accounts. He had paid his poll taxes in New Hampshire every year since coming of age, and had voted in New Hampshire at each national election. He had filed all federal income tax returns with the Collector at Portsmouth, New Hampshire. He had returned to Portsmouth on vacation for about three weeks each year. He belonged to no club in the District except a Camera Club and the Draftsmen's Union, and to no church. It was his intention to remain in the District so long as he was in Government service unless transferred elsewhere, but to return to New Hampshire when his connections with the Government service were severed. The period of his Government service was not definite, being within the discretion of the Government. He had at the time of the hearing no definite intention of returning to New Hampshire at any particular time.

In the instant case the testimony was to the following effect: Beckham, a lawyer, came with his wife to the District of Columbia in 1928 from Texas to accept a position in the Bureau of Internal Revenue which he still occupies. He and Mrs. Beckham had previously resided in Fort Worth. In the District the Beckhams have lived in a rented apartment. They own no real estate in the District but have had bank accounts. They own two parcels of real estate in a Fort Worth suburb and a cemetery lot in Fort Worth. They have paid poll taxes in Texas since coming to the District until becoming sixty-five years of age—Beckham's present age. They have voted in Texas at every general election. They have not returned to Texas during their residence in Washington. They have paid all federal income taxes at Dallas, Texas. They have no church membership in Washington, although they occasionally attend church and make small contributions. Their only church membership is in the First Church of Christ, Scientist, in Boston. Beckham has retained membership in fraternal organizations such as the Shrine, the Blue Lodge, the Consistory and the Scottish Rite in Fort Worth. They have contributed to charities in the District and not in Texas. When Beckham retires, which he is now eligible but not compelled to do, he expects to return to Fort Worth. The Beckhams have claimed Fort Worth as their residence ever since they have been in Washington. If Beckham were forced to retire prior to reaching the age of 76, and were offered a position in the District at a like salary, and if the combination of that salary with his retirement pay were enough better than what he could anticipate making in Texas he might take it. If forced out of the Government service at 70 he will go back to practice law at Fort Worth. If he retires at 76 he does not know what he will do.

"Q. Do you ever expect to get back to Texas to practice law? A. Yes, sir.

"Q. When? A. When I am separated from the service here.

"Q. You mean when you are 76 years old? A. If they force me out at 70, I will go back. At 76, I do not know.

"Q. Where would you practice? At Fort Worth? A. Yes."

We think these conditional answers to hypothetical questions constitute no substantial evidence that the Beckhams have not had during the period of their residence in the District a fixed intention at the end of Mr. Beckham's Government service to return to their previous abode in Texas. It is that fixed intention that is controlling under the ruling in the Collier case. Any honest witness—and no question of the veracity of the Beckhams is here raised—testifying to a fixed intention to return to a former abode at the end of Government service would be bound to admit, if questioned, that he might remain in the District if at some future time it was made substantially to his advantage to do so; or that if he were to reach an advanced age before his Government service ended, he might not depart. If such speculative answers to hypothetical questions warrant disregard of convincing circumstantial evidence and direct statements as to past and present domiciliary intent, then the rule of the Collier case is rendered nugatory. We think such questions and answers insufficient to bar a former domicile in the face of uncontradicted and unequivocal testimony of a fixed intent throughout the period of the Government service in the District to return to the former abode at the end of such service. The concession of counsel, mentioned above, that if the Collier decision is to stand it controls the instant case, confirms this view.

Reversed.

EDGERTON, Associate Justice (dissenting).

In District of Columbia v. Murphy, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329, the Supreme Court said: "We hold that persons are domiciled here who live here and have no fixed and definite intent to return and make their homes where they were formerly domiciled. * * * The intention to return must be unconditional * * *. In order to retain his former domicile, one who comes to the District to enter Government service must always have a fixed and definite intent to return and take up his home there when separated from the service." 314 U.S. at pages 454, 455, 456, 62 S.Ct. at page 309.

The petitioners live here. The Court ruled in the Murphy case that "The place where a man lives is properly taken to be his domicile until facts adduced establish the contrary."[1] The question therefore is whether the Board was clearly wrong in failing to find that the petitioners had proved that they had a "fixed and definite," an "unconditional," intent to return to Texas when Clifford G. Beckham is separated from the service.

I think the Board was right. Clifford G. Beckham himself testified in effect that his intent to return to Texas was not fixed and definite, but conditional, as I understand those terms. He said: "If they force me out [of government service] at 70, I will go back [to Texas]. At 76, I do not know." He said that though he were forced to retire before he was 76, he might take another position here if he were offered one at a salary sufficiently better than his probable earnings in Texas. According to his own testimony, therefore, his intent to return to Texas was conditional on (1) the age at which he might be separated from the government service and (2) the comparative employment opportunities here and in Texas that he might then find. This testimony was not contradicted.

An intent to return to a former home, subject only to some highly improbable contingency, would perhaps be fixed and definite, rather than conditional, within the

---

[1] 314 U.S. at page 455, 62 S.Ct. at page 309. "In the Murphy case the Supreme Court placed the burden upon the individual quartered in the District to establish domicile elsewhere to escape the tax." Beedy v. District of Columbia, 75 U.S.App.D.C. 289, 291, 126 F.2d 647, 649.

meaning of the rule. Perhaps nearly all intents to return are subject to some highly improbable contingencies. But considerations of that sort do not decide this case. An employee's intent to return to his former home when he retires from government service may well be subject *only* to contingencies that clearly appear to be highly improbable. But the intent of Clifford G. Beckham to return to Texas is subject to a contingency that does not clearly appear to be at all improbable. It seems to me a paradox to say that this qualified intent is clearly fixed, definite, and unconditional.

The possibility that the government may continue to employ Beckham until he is 76 years old is slight and may be ignored. But the other contingency that qualifies his intent to return to Texas cannot be ignored. It is not clearly improbable that a tax lawyer of long experience in the Bureau of Internal Revenue, who once practiced law in Fort Worth but who left Fort Worth 19 years ago, who has lived in Washington ever since, and who has no definite prospect of employment anywhere when he retires from the Bureau, may then discover a substantially better opportunity for employment in Washington than in Fort Worth. Even if the opposite contingency, the one in which Beckham intends to return to Fort Worth, were—as it is not—shown to be the more probable of the two, the Board's decision would still be right, since Beckham's intent to return to Fort Worth would still be qualified by a very substantial condition.

The Collier case seems to me quite unlike this one. Collier testified without qualification that he intended to return to New Hampshire at the end of his government service. In the presence of some additional evidence tending to show that he had that intent and in the absence, as we thought, of any evidence to the contrary, the Board's finding to the contrary seemed to us clearly wrong. We have no reason to suppose that if Collier had been asked additional questions, his intention to return would have appeared to be subject to some contingency that was not unlikely to occur. Beckham's candor in answering the additional questions that were asked of him does not obviate the legal effect of the facts that he disclosed.

As the court points out, government counsel conceded that he could not distinguish the Collier case; he thought it wrong. But he contended that the Board's decision in the present case was right and should be affirmed. Even if he had confessed error, we could not reverse the Board's decision unless we thought it wrong. Young v. United States, 315 U.S. 257, 258, 62 S.Ct. 510, 86 L.Ed. 832; Hoover Co. v. Coe, 325 U.S. 79, 65 S.Ct. 955, 89 L.Ed. 1488; Parlton v. United States, 64 App.D.C. 169, 75 F.2d 772.