## LEVER BROS. CO. v. DISTRICT OF COLUMBIA.

## DISTRICT OF COLUMBIA v. LEVER BROS. CO.

Nos. 11284, 11285.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 17, 1952.

Decided March 26, 1953.

Petition for Rehearing Denied May 26, 1953.

Mr. Milton V. Freeman, Washington, D. C., with whom Messrs. G. Duane Vieth and George Bunn, Washington, D. C., were

on the brief, for petitioner in No. 11284 and for respondent in No. 11285.

Mr. George C. Updegraff, Assistant Corporation Counsel for the District of Columbia, Washington, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, Washington D. C., were on the brief, for petitioner in No. 11285 and for respondent in No. 11284. Mr. William S. Cheatham, Assistant Corporation Counsel, Washington, D. C., at the time the record was filed, entered his appearance in behalf of the petitioner in No. 11285 and for respondent in No. 11284.

Before CLARK, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

We are here called upon to review the correctness of a decision of the Board of Tax Appeals for the District of Columbia.[1] The decision relates to the franchise tax assessed against the taxpayer, Lever Brothers Company, for the year 1948, under the District of Columbia Income and Franchise Tax Act of 1947, as amended in 1948.[2] Both Lever and the District contend that the Board erred.

1. *Taxability: "Doing Business."* The first question is one of coverage.[3] Is Lever liable to pay *any* tax under the Act? Lever is a Maine corporation, which in 1948 made and sold soap, dental and similar products. Its Soap Division had offices and a warehouse in Baltimore, Maryland. Its Pepsodent Division was conducted as a separate operation, based in New York and Philadelphia. During 1948, Lever's total sales to District of Columbia purchasers amounted to $2,632,870.88. Soap sales were solicited by three salesmen employed by the Baltimore office but regularly assigned to the District. Two of them lived here. Pepsodent sales were made under a factoring arrangement, to be discussed later.

The District of Columbia Income and Franchise Tax Act of 1947 imposes a tax on the net income from District sources of foreign and domestic corporations "For the privilege of carrying on or engaging in any trade or business within the District and of receiving income from sources within the District * * *."[4] The Act defines "trade or business" to include "any * * * commercial activity in the District * * *: *Provided, however,* That the words 'trade or business' shall not include * * * (1) Sales of tangible personal property * * * by a corporation * * * which does not physically have or maintain an office, warehouse, or other place of business in the District, and which has no officer, agent, or representative having an office or other place of business in the District * * *."[5] For corporations subject to the tax, the statute adds that its "measure * * * shall be that portion of the net income of the corporation * * * fairly attributable to any trade or business carried on or engaged in within the District and such other net income as is derived from sources within the District; *Provided further,* That income derived from the sale of tangible personal property by a corporation * * * not carrying on or engaging in trade or business within the District as defined * * * shall not be considered as income from sources within the District * * *."[6]

Did Lever's 1948 activities in the District come within the intended reach of this statutory framework? In Owens-Illinois Glass Co. v. District of Columbia, supra note 3, we held that "extensive solicitation by salesmen, in the District, which results in a large volume of sales and shipments to customers in the District, is plainly 'commercial activity in the District'. The corporation was therefore * * * 'engaging in * * * trade or business within the District,'" unless its activities came within the provisos quoted above *("Provided, however * * *" and "Provided further*

1. Now the District of Columbia Tax Court.

2. D.C.Code, § 47–1551 et seq. (1951), 61 Stat. 331 (1947), as amended, 62 Stat. 206, (1948).

3. Cf. Owens-Illinois Glass Co. v. District of Columbia, (1953) 92 U.S.App.D. C. —, 204 F.2d 29.

4. D.C.Code, § 47–1571a (1951).

5. D.C.Code, § 47–1551c(h) (1951).

6. D.C.Code, § 47–1580 (1951).

* * *"). The same may aptly be said of Lever.

The crucial question, then, is whether Lever can take advantage of the provisos, which were added to the Act by amendment passed in 1948.[7] Lever urges that it can: that it comes within the first proviso, and that the second is therefore applicable to it as well. It says that all its District activities were "sales of tangible personal property," and that it had no place of business, or representative having a place of business, in the District. The District, in urging the contrary, relies mainly on the fact that Lever entered into contracts with three local wholesale drug companies to handle its Pepsodent products. Under the contracts, the three companies were designated as factors, with authority to sell the merchandise only in the ordinary course of business and only to such retailers as were not blacklisted by Lever; they agreed actively to promote the sale of the products and to store, display and sell the products only in their regular places of business; they had no authority to purchase, encumber or dispose of the products except as provided by the contract; they agreed to sell only at the prices and upon the terms specified by Lever, and the proceeds of the sales were to be held in trust until accounted for by the factor. They made monthly accountings and monthly remittances to Lever, and sold the merchandise without any indication that they were selling as factors. They kept the products in their own warehouses in the District, from which they filled the orders they obtained, plus occasional small orders received by salesmen of Lever's Soap Division after solicitation in the District.

The question comes down to whether Lever had, in the factors, an "agent, or representative having an office or other place of business in the District." On this issue, Lever concedes that a factor is for many purposes an agent, but argues that factors are not necessarily agents for purposes of taxation,[8] and should not be treated as agents here. But we have found nothing in the legislative history that would indicate that Congress intended such factors as these to be excluded from the ambit of the word "agent." The relationship outlined above would seem to come within the definition of the statutory concept of agency which Lever itself offers: that the corporation (Lever) have supervisory control over at least a substantial part of the business of the local agent or representative or at least a part-time claim on the services of the individuals or organizations acting for it.[9] Furthermore, the Act specifically excludes "independent brokers" from the definition of agent.[10] Lever makes no attempt to equate the factors with independent brokers.[11] The specific exclusion would seem to indicate that the factors should be included within the definition of agent in the statute on the *expressio unius* principle.[12] We agree with the Board of Tax Appeals that Lever had, in the factors, agents having places of business in the District.[13]

7. Act of May 3, 1948, 62 Stat. 206, c. 246, §§ 1, 2, D.C.Code, §§ 47–1551c, 47–1580 (1951). The second proviso quoted above ("*Provided further* * * *") is essential to the tax exemption intended to be provided for businesses selling tangible goods without use of any District office. But for it, the enterprise would be taxable on account of receiving income from District sources, even if, by virtue of the first proviso, it was not "doing business" in the District.

8. Citing City of Atlanta v. York Mfg. Co., 1923, 155 Ga. 33, 116 S.E. 195.

9. Petitioner's Br. p. 15.

10. "For purposes of this proviso, the words 'agent' or 'representative' shall not include any independent broker engaged independently in regularly soliciting orders in the District for sellers and who holds himself out as such." D.C.Code, § 47–1551c (1951).

11. Petitioner's Br. p. 15, fn. 6; Reply Br. p. 7.

12. Cf. Hill v. City of Eureka, 1939, 35 Cal.App.2d 154, 94 P.2d 1025; In re Taft's Estate, 1939, 110 Vt. 266, 4 A.2d 634, 120 A.L.R. 1382.

13. The District relies also (1) on the fact that some salesmen for other Lever products who worked out of Baltimore were resident in the District and transacted some business in their homes and (2) on the fact that some orders of

It follows, to paraphrase our opinion in Owens-Illinois, that because the corporation had agents in the District, "the first statutory proviso quoted above ('*Provided, however* * * *') does not apply. Because the corporation was engaging in business in the District, the second proviso ('*Provided further* * * *') does not apply." Accordingly, Lever is taxable under the statute.

*2. The Measure of the Tax: Validity of the Commissioners' Regulations.* The District Comissioners have authority under the Act, "Where the net income of a corporation * * * is derived from sources both within and without the District," to prescribe regulations for determining "the portion thereof subject to tax * * *." [14] Acting pursuant to this authority, the Commissioners promulgated a regulation applicable to the year 1948 [15] which prescribed that the portion of gross income from sales of tangible personal property "to be apportioned to the District shall be such percentage of the total of such gross income as the District sales made during such taxable year bear to the total sales made everywhere during such taxable year. For the purpose of this regulation the phrase 'District sales' shall mean the gross receipts from all sales made which were principally secured, negotiated, or effected by owners, employees, agents, officers and branches of the corporation or unincorporated business located in the District * * *." [16] The regulation does not make the place of passage of title to the goods sold any part of the test of a sale's taxability. The validity of this regulation, as applied to Lever, has therefore been subjected to a twofold challenge.

A. Lever contends that even if it is taxable, this regulation cannot properly be applied to it so as to include in the measure of its tax any sales in which title passed outside the District. Such sales made up the bulk of its District business in 1948. The factor sales, which have been described, amounted to only $37,000, and Lever does not contend that title to the goods thus sold passed outside the District. But in addition, Lever sold about $2,500,000 of its products to District customers by other means—chiefly, the efforts of salesmen working out of the Baltimore office. These salesmen, according to Lever, secured orders "accepted" outside the District, so that title to the goods "passed" outside the District. The Board of Tax Appeals held, contrary to Lever's contentions, that sales of this sort should be included in the measure of Lever's tax.

Lever's argument on this issue may be simply stated. It points out that the Act defines "taxable income" as "the amount of net income *derived from sources within the District* within the meaning of" certain subsequent sections. [17] It then urges that income from the sale of goods cannot be "derived from sources within the District" unless title passes within the District. It bases its contention on the fact that this court held, in decisions rendered immediately prior to the passage of the 1947 Act, [18] that the only test for determining whether income from sales was "from sources within the District" (for purposes of the 1939 Income Tax Act) was whether title passed within or without the District. It claims that Congress knew of this construction, endorsed it, and intended it to be followed

Lever customers were filled from stocks of goods in the District—i. e., in the factor's warehouses. We need not reach these contentions, and express no opinion on them.

14. D.C.Code, § 47–1580a (1951).

15. Regulations Pertaining to Income and Franchise Taxes, as amended Aug. 31, 1948, Jan. 7, 1949, § 17.

16. Id. § 10–2(d) (1)*a*. The ratio of District gross receipts to total gross receipts thus arrived at is then applied to

the corporation's net income for the year, to determine "the portion thereof subject to tax."

17. D.C.Code, § 47–1571(1951). (Italics added.)

18. District of Columbia v. Johnson & Wimsatt, 1947, 82 U.S.App.D.C. 81, 160 F.2d 913; Electric Storage Battery Co. v. District of Columbia, 1946, 81 U.S. App.D.C. 135, 155 F.2d 867; cf. Eastman Kodak Co. v. District of Columbia, 1942, 76 U.S.App.D.C. 339, 131 F.2d 347.

in construing the substantially identical wording of the new act.[19]

The District, on the other hand, argues that the place of passage of title of goods is no longer controlling. It claims that Congress, although it used the words "derived from sources within the District" in the 1947 Act, intended to provide—or permit—a different test of the taxability of sales.

The legislative history of the 1947 Act and the 1948 amendment supports the District's argument. The District authorities never recognized passage of title as the sole test of taxability under the 1947 Act. They considered that test to be unfair and unworkable, and opposed it when Congress was dealing with the 1947 Act and the 1948 amendment.[20] They had sought an entirely new act, rather than amendment to the old,[21] and apparently one reason they did so was to get away from this test. The Commissioners described their draft of the proposed 1947 Act as one taxing "income of corporations which is derived from sources within the District," in which, however, "the passage of title * * * [is] not specifically made any part of the test of the geographical source of [sales] income."[22] This was fair notice that the District intended to take any reference to source of income in the new act as having a new and looser meaning, when applied to income from sales of goods. Then, in the Regulations governing allocation of income issued after the new act was passed,[23] the District authorities recognized passage of title as *a* test,[24] but not *the* test, of source of sales income.[25] They sought to take into account for tax computation sales in which title passed without as well as within the District. These Regulations showed clearly that the District tax authorities viewed the statutory reference to source of income as having a broader meaning than it did under the 1939 Act.

As a result of the adoption of the Regulations, certain out-of-District businesses selling tangible personalty in the District apparently became subject to tax.

19. Thus Lever's position is that, under the 1947 Act, before enactment of the provisos, its tax was not measurable by income from any sales in which title to the goods sold passed outside the District. Lever would deny that even the factor sales could be taken into account in measuring its tax liability, if title to the goods sold by the factors passed outside the District. Its position in such a case would be that even if it was "taxable" because of the factoring arrangements, the amount of the tax would be zero. The only effect, according to Lever, of the addition of the provisos in 1948 is to exclude liability on account of sales in which title passes *in*side the District as well, if the sales are made in a year in which the taxpayer maintains no office of any kind in the District.

20. "[The test] caused much administrative difficulty and litigation as well as considerable inequitable taxation as between corporate taxpayers." Statement of Vernon E. West, Corporation Counsel for the District of Columbia, Hearings Before the Joint Subcommittee on Fiscal Affairs of the Committees on the District of Columbia, 80th Cong., 2d Sess. (1948), "Fiscal Affairs of the District of Columbia, 1948–49," p. 111.

21. "The Commissioners * * * deemed it advisable to provide a new income-tax law for the purpose of 'correcting the defects and inconsistencies in the present law, rather than to further amend [it]'." Hearings, supra note 20, p. 111.

22. Ibid.

23. The act as passed differed from the draft proposed by the Commissioners, but not in any particular material to the above description of their draft.

24. "Income derived from the sale of tangible personal property shall be deemed to be income from sources within the District where title to the property sold passes from the seller to the purchaser within the District." § 10–2(d) (1)*a* of Regulations Pertaining to Income and Franchise Taxes, as amended Nov. 28, 1947. The original regulations under the new act, promulgated three months earlier, took no position on the source of sales income. Regulations Pertaining to Income and Franchise Taxes, promulgated Aug. 28, 1947, § 10–2(d) (1)

25. § 10–2(d) (1)*c* of the Regulations, as amended Nov. 28, 1947, provided that 50 per cent of the income from certain sales of goods where title passed outside the District should be treated as derived from sources within the District.

Not wishing to rely—entirely, at least—on a claim that the source of sales income is determined solely by where title passes, they sought their remedy in Congress.[26] Their original proposal was "to exempt from taxation income derived from the procurement of orders for the sale of personal property by means of telephonic communication, correspondence, or solicitation by salesmen in the District where such orders required acceptance without the District before binding the parties *and title to such property passed without the District* * * *."[27] Thus Congress was in substance invited to repudiate the construction that District tax officials had put upon the words "derived from sources within the District" in the 1947 Act. At the behest of these officials,[28] it refused. Instead the two provisos discussed above, making exemption turn on lack of any kind of a District office, rather than on where title passes, were adopted. It would thus appear that Congress authorized a broader construction of "derived from sources within the District" than had prevailed under the 1939 Act.[29] We conclude that the Board of Tax Appeals was correct in holding that under the statute the measure of the tax was not limited to sales in which title passed in the District.

B. Although the Board rejected Lever's contention as to the passage of title test, it did not affirm the tax assessed. It thought the District Commissioners' regulations governing the manner of taking sales by interstate businesses into account produced a result not intended by Congress, and therefore substituted a formula of its own which it thought "applicable to this case." Its action raises two questions: was it correct in finding the Commissioners' regulations improper under the Act,[30] and, if so, was it within its powers in making the substitution?

The District argues only the second question in its appeal. It contends that the Board had no authority to prescribe and use a formula of its own applicable to Lever. In its view, the Act commits prescription of formulas of general applicability "solely" to the Commissioners, and permits application in particular cases of no other formulas, nor their application by anyone other than the Assessor.[31] The Board, it says, "was bound by the method used by the Assessor."

We think it unnecessary to deal here with the question of the Board's power to substitute allocation formulas of its own for those prescribed by the Commissioners. In our view the Board erred in concluding that the District regulation as applied is invalid. This regulation, as we have seen,[32] allocates to the District the gross income from any sale "principally secured, nego-

---

26. See Hearings, supra note 20, passim. The validity of the Regulations was apparently not challenged in the courts.

27. H.R.Rep.No.1792, 80th Cong., 2d Sess., p. 2. (Italics added.)

28. Ibid.

29. Lever concedes that the 1948 amendment changed the meaning of the statutory reference to source—though it argues, of course, that that meaning was merely narrowed, not replaced. Br. p. 20; Reply Br. p. 9.

30. The Board's opinion is somewhat ambiguous. There is a suggestion that the Board thought the Commissioners had prescribed no regulation applicable to this case, rather than an improper one. See Memorandum, J.A. 20. We think it clear, however, that the Commissioners' regulation concerning sales of tangible personal property was intended to be ap-plicable to cases of the present sort; we therefore construe the Board's action as a finding that this regulation was invalid as applied to Lever.

31. Sec. 47–1580a, D.C.Code (1951), reads in pertinent part: "Where the net income of a corporation * * * is derived from sources both within and without the District, the portion thereof subject to tax under this article shall be determined under regulation or regulations prescribed by the Commissioners. The Assessor is authorized to employ any formula or formulas provided in any regulation or regulations prescribed by the Commissioners under this article which, in his opinion, should be applied in order to properly determine the net income of any corporation or unincorporated business subject to tax under this article."

32. Supra, notes 15 and 16, and related text.

tiated, or effected by owners, employees, agents, officers and branches of the corporation * * * located in the District" regardless of the place of passage of title. The Board apparently thought that the place of passage of title, while no longer the sole test of taxability of a sale, nevertheless could not be ignored. After a review of the history of the statute and regulations, it concluded that "there is now no provision dealing specifically with the precise problem here presented namely, solicitation of business in the District and the passage of title without the District. Thus the Commissioners under * * * [directions] to determine the portion of income derived from such sales subject to tax, have determined that all of it is subject to tax. This does not seem to have been the intention of Congress." [33] It therefore declined to affirm the assessment based on the regulation in effect for the year 1948. Instead, on the theory that this was more in line with congressional intent, it substituted, and applied to Lever's non-factor sales, an earlier regulation directing allocation to the District of only 50 per cent of the gross income from each such sale. [34]

We find little to support the Board's conclusion about the intention of Congress. The legislative history is not of much help. During hearings on the 1948 amendment, it is true, the District tax officials stated that it was their practice not to allocate to the District all the income from sales in the District, where the goods were manufactured outside the District "Because part of that profit was earned by the manufacture, and only part of it by the sale." [35] But this oral statement concerning alloca-

tion practice at that time was inaccurate. *All* the income from sales in which title passed within the District was then allocated to the District, regardless of "manufacturing profit," as a reading of the regulations would have shown. Further, the tenuousness of reading a representation of future practice into a statement of present practice seems obvious. Nothing in the record indicates that Congress was influenced by or relied on the quoted statement when it amended the Act.

No question is raised as to the constitutionality of the District's allocation formula, nor do we think one might properly have been. [36] Certainly the due process clause does not require apportionment of part of the gross receipts from sales to the jurisdiction of manufacture. [37] We conclude, therefore, that the regulation prescribed by the Commissioners for the year 1948 and applied by the Assessor was valid under the Act, and that the Board erred in substituting another.

4. *The Measure of the Tax: Application of the Commissioners' Regulation.* The Board of Tax Appeals presumably did not attempt to apply the regulation just discussed, since it found the regulation invalid as applied to Lever's sales. Certainly it made no findings that any of Lever's sales were "principally secured, negotiated or effected" by an agent or branch "located in the District," within the meaning of the regulation. Such findings are essential, as to all sales which are to be included in the measure of the tax. The case must therefore be remanded for proper application of the regulation. [38]

33. J.A. 20.

34. Regulations Pertaining to Income and Franchise Taxes, as amended Nov. 28, 1947, § 10-2(d) (1)c.

35. Statement of Vernon E. West, Corporation Counsel for the District of Columbia, Hearings, supra note 20, at p. 105.

36. See Silverstein, Problems of Apportionment in Taxation of Multistate Business, 4 Tax L.Rev. 207, 211-15 (1949).

37. Panitz v. District of Columbia, 1941, 74 App.D.C. 284, 122 F.2d 61; Eastman Kodak Co. v. District of Columbia,

1942, 76 U.S.App.D.C. 339, 131 F.2d 347; cf. District of Columbia v. Johnson & Wimsatt, 1947, 82 U.S.App.D.C. 81, 160 F.2d 913; General Electric Co. v. District of Columbia, 1940, 71 App. D.C. 321, 110 F.2d 261; Colgate Palmolive Peet Co. v. District of Columbia, 1940, 71 App.D.C. 324, 110 F.2d 264.

38. Cf. District of Columbia v. Morris, 1946, 81 U.S.App.D.C. 356, 159 F.2d 13. We have not overlooked Lever's contention that under the regulation in question its sales to Safeway Stores should be excluded from the category of "District sales." This is a question for

For these reasons, the decision of the Board will be

Affirmed in part and reversed in part, and the cause remanded for further proceedings not inconsistent with this opinion.

CLARK, Circuit Judge, dissents.

See also 89 App.D.C. 267, 192 F.2d 404.

the Board of Tax Appeals (now the Tax Court) in the first instance. The Board of Tax Appeals found that "Orders from Safeway went directly by mail weekly from it to [Lever's] Baltimore division. However, the head of the Baltimore division came to the District approximately once every two weeks or once a month and informed Safeway of such promotional plans designed to increase the sales of its products as it had in contemplation, for the purpose of inducing Safeway to increase its orders to meet the anticipated increased demand." J.A. 14–15. In the Board's memorandum opinion, it added that although "many of the orders from Safeway * * * came to * * * Baltimore * * * directly by mail and without specific solicitation on behalf of [Lever] * * * they were to a substantial extent induced or promoted by the sales manager

of [Lever's] Baltimore division on his monthly or semi-monthly trips into the District." J.A. 21. It included all the Safeway sales in the tax computation. We do not take these conclusions to be the equivalent of a finding that all the Safeway sales were "principally secured" by someone "located in the District." Rather, we think, they were intended to constitute a determination that the sales "resulted from personal solicitation * * * in the District," within the meaning of the language of the prior regulation which the Board applied. § 10–2(d) (1)c(B) (2), Regulations Pertaining to Income and Franchise Taxes, as amended Nov. 28, 1947. The status of Lever's sales to Safeway is therefore one of the matters to be considered by the Board on remand, when it applies the proper regulation to the case.