**Frederick P. ANDREWS and Edith W. Andrews, Appellants,**

**v.**

**DISTRICT OF COLUMBIA, Appellee.**

**No. 81–78.**

District of Columbia Court of Appeals.

Argued Nov. 18, 1981.

Decided April 1, 1982.

Howard E. Wahrenbrock, Washington, D. C., with whom James E. Hickey, Jr., was on the briefs, for appellants.

Robert J. Harlan, Jr., Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel, Charles L. Reischel and James E. Lemert, Deputy Corp. Counsel, and Richard L. Aguglia, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KELLY, NEBEKER and BELSON, Associate Judges.

KELLY, Associate Judge:

■ At issue in this appeal is the validity of the trial court's denial of attorney's fees to appellants because of the alleged bad faith conduct of appellee. Finding no abuse of discretion in the court's ruling[1] and no merit in the other issues on appeal, we affirm.

I

When this distressing saga began, appellants resided in the District of Columbia on McKinley Street, N.W. Mrs. Andrews was employed as a labor economist with the U.S. Department of Labor. Appellants sold their home in the District and, on November 15, 1969, moved to Geneva, Switzerland, where Mrs. Andrews worked as a U.S. Civil Service employee on loan to the International Labor Organization (ILO). When the ILO suffered financial reverses, they extended Mrs. Andrews' employment contract for six months to June 1971, but she refused to accept their offer of monthly extensions thereafter.

Before returning to the United States, appellants searched in Europe for a retirement home. They ultimately purchased land in Cyprus, with the intention of retir-

ing there as soon as finances permitted. On July 6, 1971, appellants returned to Washington, D. C., where Mrs. Andrews resumed employment with the U. S. Department of Labor. They lived in a hotel in the District for a month while seeking a house in the suburbs, and on August 13, 1971, moved to a home in Bethesda, Maryland.

II

The District of Columbia government collected $1,813 in income taxes from appellants for the period from November 15, 1969 to August 13, 1971, pursuant to D.C. Code 1981, §§ 47–1801.4(17), –1806.3 (a tax levied on those persons who are domiciliaries of the District on the tax day). When appellee denied appellants' request for a tax refund, appellants sued in Superior Court, contending that they did not owe the tax because they were not domiciled in the District during the period in question. A bench trial was held before then Judge Harry T. Alexander on April 18 and 19, 1973. Appellee moved for an immediate decision at the end of the trial, but appellants opposed the motion in order to have the opportunity to file a trial brief. Appellee's motion was denied, a trial transcript was prepared, and briefs were filed. The series of events which followed defy explanation from the court and do no credit to the judicial process.

On December 1, 1976, after three years of silence, appellants moved to expedite decision. Pursuant to this motion, Judge Fred Ugast explained to counsel that the trial judge had retired without deciding the case and that the court file, including the trial exhibits, had been misplaced. When counsel could not settle the case, they filed a joint request for decision based on the trial transcript and the trial briefs. On January 3, 1977, Judge Ugast declared a mistrial, ruling that since the question of domicile appeared very close he could not decide the case without observing appellants' demeanor on the stand to determine issues of credi-

---

1. "Where the trial court exercises its discretion on the issue of award of attorney's fees, our role on review is to determine whether the

court abused that discretion." *Trilon Plaza Co. v. Allstate Leasing Corp.*, D.C.App., 399 A.2d 34, 38 (1979).

bility. A motion to reconsider was denied on May 11, 1977. On June 6, 1977, because appellants had moved to Cyprus and could not, without considerable sacrifice, return to the United States for a new trial, they appealed from the denial of reconsideration of the mistrial order. That order was not appealable, however, and the appeal was dismissed on November 9, 1977. Appellants then moved for a new trial and admission of former trial testimony and exhibits on December 7, 1977. Judge John Garrett Penn granted the motion for a new trial and admission of former trial testimony, but because appellee objected to the identification and filing of appellants' copies of appellants' former trial exhibits, he requested that counsel confer and report back on the status of the trial exhibits. Judge Penn resigned from the court before a decision was made as to the use of the duplicates of the former trial exhibits.

Undaunted, appellants filed a motion for substitution of documents as duplicates in lieu of lost exhibits one through five (appellants' exhibits only). Appellee failed to reply in writing to this motion, but opposed it at oral argument, counsel noting that he was trying to settle the case. Judge William Pryor granted the motion on July 11, 1979, the date of the oral argument. On the trial date, October 30, 1979, Judge John Fauntleroy (differing with Judge Ugast) decided a trial was unnecessary and that he would decide the case on the record, after submission of exhibits and a legal memorandum by appellee with an opportunity for appellants to respond. Appellee, characteristically, failed to file the requested documents within the allotted 30 days, so on December 12, 1979, appellants filed yet another motion for decision. In its reply to this latest motion, filed January 11, 1980, appellee, in apparent surrender, withdrew its opposition to granting a refund to appellants, together with the allowable statutory interest, insisting however that its action in no way waived any of its rights, defenses, determinations or authority previously asserted in the case for purposes of this case or any future case. Appellants opposed appellee's equivocal proposed withdrawal and

filed a brief on the merits on February 19, 1980. At a hearing on May 28, 1980, Judge Fauntleroy stated that he was prepared finally to decide the merits and dispose of the case, but wanted to tie all pending matters into one order. Because appellants wanted a decision on an award of attorney's fees and an award of interest on the refund above the statutory rate to be included in the order, the court continued the case until July 16, 1980, for oral argument on those issues. On July 9, 1980, appellants filed a motion to determine reasonable attorney's fees and interest and a request for further findings. Appellee filed its reply on July 16, 1980, the date of the hearing. Judge Fauntleroy found that "the record fails to disclose that the District of Columbia acted in bad faith," and accordingly denied appellants' request for attorney's fees. He also ruled that he was bound to follow the interest rate fixed by statute. Accordingly, he awarded interest on the refund at the statutory rate of 4%, and requested appellee to file a proposed order. Appellants filed a motion to expedite entry of final judgment on July 31, 1980. Appellee filed proposed findings of fact, conclusions of law and order on August 8, 1980; and appellants filed comments thereon on August 13, 1980. The court entered its findings of fact, conclusions of law and an order on January 6, 1981. Notice of appeal was timely filed on January 16, 1981.

### III

■ The general, or American rule, is that in the absence of statutory authority the prevailing party may not recover attorney's fees. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 245, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *American Federation of State, County and Municipal Employees, AFL–CIO v. Ball,* D.C.App., 439 A.2d 514 (1981) (*AFSCME v. Ball*); *Trilon Plaza Co. v. Allstate Leasing Corp.,* D.C. App., 399 A.2d 34, 37 (1979). This rule is based on notions that "no person should be penalized for merely defending or prosecuting a lawsuit" and that "the threat of having to pay an opponent's costs might un-

justly deter those of limited resources from prosecuting or defending suits." *Harkeem v. Adams,* 117 N.H. 687, 690, 377 A.2d 617, 619 (1977). On the other hand, when a party institutes or prolongs litigation through bad faith, or obstinate, unjust, vexatious, wanton, or oppressive conduct, a court, through its equity power, may award counsel fees to the opposing party. *See id.* at 690–91, 377 A.2d at 617; *Hutto v. Finney,* 437 U.S. 678, 689 n.14, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978); *Trilon Plaza Co. v. Allstate Leasing Corp., supra* at 37; 6 Moore's Federal Practice § 54.77[2], at 1709 (2d ed. 1981). Under this exception, an award of attorney's fees "vindicates judicial authority without resort to the more drastic sanctions available for contempt of court and makes the prevailing party whole for expenses caused by his opponent's obstinacy." *Hutto v. Finney, supra* at 689 n.14, 98 S.Ct. 2573. Nevertheless, the court's equity power is to be exercised only under extraordinary circumstances. *Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *e.g., Bradley v. School Board of City of Richmond, Virginia,* 345 F.2d 310, 321 (4th Cir.), *vacated on other grounds,* 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187 (1965); *see* 6 Moore's Federal Practice, *supra* at § 54.77[2], at 1709–11. In *Harkeem v. Adams, supra,* the court reasoned that an award of attorney's fees is warranted "[w]here an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention...." *Id.* at 691, 377 A.2d at 619. *See also Bradley v. School Board of City of Richmond, Virginia, supra* at 321; *Shull v. Columbus Municipal Separate School District,* 338 F.Supp. 1376 (N.D. Miss.1972). In that case, a determination by the New Hampshire Department of Employment Security (DES) that the appellant was ineligible for unemployment benefits because he had voluntarily quit his employment was overturned by the court. Nevertheless, DES used the same rationale to disqualify the appellant from benefits for a second period of time, necessitating a second hearing. At this hearing, DES ar-

gued the appellant's ineligibility for unemployment benefits on totally different grounds. The court found that there was no basis to deny the appellant his benefits and that the conduct of DES was arbitrary, capricious, frivolous, unreasonable, and violated principles of fair play. Accordingly, it awarded attorney's fees to the appellant. In *AFSCME v. Ball, supra* at 516, an award of attorney's fees was sustained when "AFSCME sought three times in two jurisdictions, each time proffering the same rationale, to frustrate the [District of Columbia] Superior Court's orders."

 In the instant case, appellants contend (with understandable impatience) that because the law was clearly on their side, appellee's defense of this lawsuit for eight years before acceding to a tax refund constituted bad faith conduct justifying an award of attorney's fees. This argument is appealing but, ultimately, is not dispositive. In the District of Columbia, an income tax is levied on all domiciliaries of the District on the tax day. *Alexander v. District of Columbia,* D.C.App., 370 A.2d 1327 (1977); D.C.Code 1981, §§ 47–1801.4(17), –1806.3. Appellants argue that *District of Columbia v. Murphy,* 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329 (1941), establishes a presumption that one is domiciled where one lives and the burden of proof at trial is on the party claiming otherwise. Since appellants were living in Switzerland during the period of time in which they were taxed in the District, they contend that it was the appellee's burden at trial to prove that they were not then domiciliaries of the District of Columbia. Appellants are correct in their assertion that "[t]he place where a man lives is properly taken to be his domicile until facts adduced establish the contrary," *id.* at 455, 62 S.Ct. at 309, but they are incorrect as to the burden of proof. The *Murphy* opinion states that "[i]f one has at any time become domiciled here, it is his burden to establish any change of status upon which he relies to escape the tax." *Id.* at 456, 62 S.Ct. at 310. It is unquestioned that appellants were domiciliaries of the District of Columbia before moving to Geneva, Switzerland.

Thus, it was their burden to prove that they changed their domicile at that time. "[T]he question of domicile is a difficult one of fact to be settled only by a realistic and conscientious review of the many relevant (and frequently conflicting) *indicia* of where a man's home is...." *Id.* at 455, 62 S.Ct. at 309. "[T]o prove that persons who have left their former dwelling places and have taken up residence in another state in order to accept work in the federal civil service are domiciled in their new location, the facts adduced must demonstrate that such persons 'have no fixed and definite intent to return and make their homes where they were formerly domiciled.'" *Alexander v. District of Columbia, supra* at 1329 (quoting *District of Columbia v. Murphy, supra* 314 U.S. at 454–55, 62 S.Ct. at 309). Domicile has been defined as "the place where one has his true, fixed, permanent home and principal establishment and to which, whenever he is absent, he has the intention of returning...." *District of Columbia v. Murphy, supra* at 451, 62 S.Ct. at 307 (quoting 84 Cong.Rec. 8974 (1939)).

A trial court could reasonably have concluded from the evidence adduced at trial that appellants' domicile was in the District of Columbia. Mrs. Andrews testified that she wrote to one Mrs. McGuire of the U. S. Civil Service Retirement in December 1970, stating that when her contract expired on June 30, 1971, she would return to Washington to seek employment. Mr. Andrews testified that his sole purpose in leaving the United States to go to Switzerland was so that his wife could fulfill her one year contract with the ILO. He also testified that he filed an application for permit to reenter the United States under no compulsion, but because he intended to return to the United States. In October 1970, he stated on an application for extension of a permit to reenter the United States that the reason for the requested extension was that his wife's contract was up for an extension. Since appellee could have reasonably expected to prevail based on this testimony, the trial court could conclude that appellee did not act in bad faith in continuing defending the suit, a position which is bolstered by the fact that at least one trial judge considered the question of domicile in this case to be close.

Furthermore, the excessive delays in the resolution of this case were caused largely by appellants and the court system, not by appellee. In the almost 8½ years from April 1973, when the trial was held, until January 16, 1981 when the notice of appeal was filed, only two periods of delay can be attributed to appellee. The first, from December 7, 1977 to July 11, 1979, occurred when appellee objected to having duplicates of former trial exhibits entered at a new trial. This was a valid and reasonable position for appellee to take and cannot be deemed to have been undertaken in bad faith, solely for the sake of delay. The other period of delay arguably attributable to appellee was a one month, eleven-day period between November 30, 1979 and January 11, 1980, when appellee was supposed to file its exhibits and a legal memoranda, but instead filed a reply cancelling its objections to the refund. Such a short period of delay does not rise to the level of bad faith conduct justifying an award of attorney's fees.

Despite its obduracy, appellee's conduct does not approach that of the parties in the cases cited above. Its argument that appellants were in fact domiciliaries of the District and were legally subject to income taxation in the District remained unchanged throughout the lawsuit. Its conduct did not force appellants to seek judicial aid for a right that was clear, defined and established; in fact, the merits of the case have never been adjudicated. Appellee supposedly dropped its opposition to the tax refund because continuance of defending its claim became cost ineffective. The merits were not adjudicated largely because of delays induced by appellants. Accordingly, we hold that the trial court did not abuse its discretion in denying counsel fees to appellants.

IV

Appellants contend that an award of 4% interest on the tax refund authorized by D.C.Code 1973, § 47–2413(c) (now D.C.Code 1981, § 47–3310(c)) is insufficient. Because

refunding taxes with *no* interest has been deemed adequate relief for an aggrieved taxpayer, we find this contention meritless.[2] *E.g., Rosewell v. LaSalle National Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981).

V

Finally, appellants contend that appellee is practicing unjustifiable discrimination in violation of the due process clause of the Fifth Amendment because it allegedly differentiates between taxpayers who leave the District to live elsewhere in the United States and those who leave the District to live abroad. Having failed to raise this issue in the trial court, appellants cannot properly raise it here. *See Miller v. Avirom*, 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967).

*Affirmed.*

NEBEKER, Associate Judge, concurring in part and dissenting in part:

Appellants have been treated most shabbily in this case, and mainly so by the Superior Court. We cannot wash our hands of this by viewing the case through a prism which divides the state into judicial and litigating arms and then say to appellants the District's counsel was not at fault, take your hollow victory and do not feel too ill of the judicial process for this inexplicable treatment. We compound the insensitivity by ritualistic recitation of rules on burden of proof, domicile, chilling access to the courts, and abuse of discretion. By whatever rubric—equity, abuse of discretion, or our own authority under D.C.Code 1981, § 17–306—I would direct payment of reasonable attorney's fees in this case.

---

**2.** We need not reach appellants' constitutional claim that the appellee effected a taking of their property for public use without just compensation because statutes indicate that 4% interest is a fair return on a tax refund.