Andre **FULLARD**, Appellant,

v.

Barbara L. **FULLARD**, Appellee.

No. 91–FM–542.

District of Columbia Court of Appeals.

Submitted Jan. 23, 1992.

Decided Sept. 11, 1992.

---

Alda A. Anderson, Hyattsville, Md., was on the brief, for appellant.

Stephen M. Salinger, Washington, D.C., was on the brief, for appellee.

Before TERRY, FARRELL and WAGNER, Associate Judges.

FARRELL, Associate Judge.

In this appeal arising from a divorce and division of marital property followed by agreements which the parties reached for transfer of the home to the wife, appellant (Mr. Fullard) alleges error by the trial court when it ordered him to reimburse appellee in the amount of $1,000.00 for the removal of chemical waste materials from the garage adjoining the marital home. Appellant also contests the award of $3,388.00 in attorney's fees and $96.65 in costs to appellee. We affirm as to the reimbursement but find partial error in the award of attorney's fees and costs. We therefore vacate the fee award and remand for reconsideration of it in light of this opinion.

I.

The parties were granted an absolute divorce on November 7, 1989. Under the divorce decree, appellant (Mr. Fullard) was to purchase Mrs. Fullard's interest in the marital home, or, if this could not be arranged, the parties were to sell the home and divide the proceeds. They were directed to "execute all documents necessary to accomplish the division of their marital assets" by March 1, 1990. On June 1, 1990, Mrs. Fullard moved to have Mr. Fullard held in contempt partly because of his alleged refusal to sign a listing agreement to sell the home. At a hearing on the motion on June 22, 1990, the court held the motion for contempt in abeyance and—apparently pursuant to the parties' agreement—entered an order requiring that Mr. Fullard's interest in the home be sold to Mrs. Fullard.[1] At a second hearing on the contempt motion on August 10, 1990, the court learned that the parties had agreed in writing on the date Mr. Fullard would vacate the premises, and had further agreed that he would "broom clean the house" before leaving it. Mrs. Fullard asserted at the hearing that, upon preparing to move into the house, she had found chemical waste materials and other debris in the garage on the property. Mr. Fullard, through his counsel, apparently acknowledged that some two years earlier he had placed bags of Supertherm blowing insulation in the garage.[2]

The trial court therefore ordered Mr. Fullard to arrange for the removal of the waste material and debris from the garage and that, since it was reasonable to fear the materials were chemical in nature, he must do so through the services of a professional waste removal company. In the event he did not do so, Mrs. Fullard was authorized to have the materials removed and to deduct the cost from monies she owed Mr. Fullard. Mr. Fullard neither ap-

1. The court summarized the proceedings and evidence taken at this and later hearings in written orders filed on September 10, 1990, and April 8, 1991. Appellant has provided us with, to say the least, a truncated record on appeal which includes none of the transcripts of the several hearings conducted by the trial court on the motion for contempt.

2. The trial court stated this as fact in its September 10 order, and appellant does not dispute it.

pealed from nor sought reconsideration of this order. Instead he apparently attempted to remove the debris and waste materials by himself, but in a manner unsatisfactory to Mrs. Fullard. She therefore retained a specialist in chemical waste disposal to remove the materials at a cost of $1,000.00. At a hearing on November 14, 1990, the trial court determined that Mr. Fullard had disobeyed the order to remove the materials in the manner prescribed, hence justifying Mrs. Fullard's resort to a specialist. The court therefore ordered Mr. Fullard to reimburse her for the expense of $1,000.00, and further granted Mrs. Fullard's request for attorney's fees of $3,388.00 plus costs. The court found the fees and costs to be

> more than justified based both on [Mr. Fullard's] delinquency in cooperating with plaintiff in making arrangements for the sale of their former marital home and [on] his failure to follow the explicit commands of this court to hire a professional chemical removal company to remove the suspected chemical waste materials and debris which remained in the garage.

The court denied Mrs. Fullard's motion for contempt without prejudice to its renewal if the present order were not complied with. Mr. Fullard appeals both the order of reimbursement and the award of fees and costs.

## II.

In ordering Mr. Fullard to arrange, at his expense, for removal of the chemical waste material, the trial court evidently deemed that obligation to flow from Mr. Fullard's written agreement to "broom clean the house" before vacating it. Appellant argues that the court's later reimbursement order rested on a misunderstanding of the agreement, which—he asserts—did not include an obligation to clean

the garage. We conclude that it is unnecessary to decide this issue. "[E]xtrinsic evidence may be considered to determine the circumstances surrounding the making of [a] contract, so that it may be ascertained what a reasonable person in the position of the parties would have thought the words meant." *1010 Potomac Assocs. v. Grocery Mfrs.*, 485 A.2d 199, 205–06 (D.C.1984) (footnote and citations omitted). There is every reason to think such evidence was presented at the August 10, 1990 hearing before the trial court ordered appellant to arrange for the waste removal. But, as pointed out in note 1, *supra*, appellant has provided this court with no transcript of that or any other hearing on the motion for contempt. On its face, the trial court's interpretation of the agreement as including a duty to remove potentially hazardous waste material from the garage does not seem unreasonable. *Id.* at 205 ("first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant"). But in view of appellant's failure to provide an adequate record for resolving this issue, we conclude we are under no obligation to decide it. *Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982).[3]

## III.

In awarding Mrs. Fullard attorney's fees and costs, the trial court did not recite the statutory or other authority on which it relied. Mrs. Fullard correctly does not assert that the court's original authority under D.C.Code § 16–911(a)(1) (1989) to award "suit money, including counsel fees," "*during* the pendency of an action for divorce" (emphasis added) allowed it to award counsel fees in connection with her *post*-divorce efforts to enforce the parties' agreements.[4] Instead Mrs. Fullard de-

3. For the same reason, we decline to consider appellant's arguments that appellee "presented no evidence to support her contention that there was in fact chemical waste in the garage or that anything in the garage required the services of a chemical waste removal specialist," and that the court erroneously failed to require appellee to present live testimony of the specialist rather than introducing his written report.

4. *See, e.g., Meyers & Batzell v. Moezie*, 208 A.2d 627, 629 (D.C.1965) ("a husband can be held liable for the legal expenses incurred by his wife in a divorce action only if the divorce court so orders during the pendency of the action").

fends the award under one of the "narrowly-defined common law exceptions" to the American Rule governing attorney's fees. *E.g., Dalo v. Kivitz,* 596 A.2d 35, 37 (D.C. 1991) (citations omitted). Mrs. Fullard relies on the principle that fees may be awarded where a party "withholds action to which the opposing party is patently entitled, as by virtue of a judgment ..., and does so in bad faith, vexatiously, wantonly, or for oppressive reasons...." *1901 Wyoming Ave. Coop. Ass'n v. Lee,* 345 A.2d 456, 464–65 (D.C.1975); *see also F.W. Berens Sales Co. v. McKinney,* 310 A.2d 601, 603 (D.C.1973). Mrs. Fullard contends that appellant both "withheld action" to which she was clearly entitled under the divorce decree—*i.e.,* his cooperation in the sale of the house—and defied an explicit court order in not having the waste materials removed professionally, both times requiring her to seek judicial relief and incur additional legal expenses.

We hold that the court could properly award attorney's fees for Mr. Fullard's disobedience of the court order, but we do not find an adequate basis for the award in connection with what the court termed Mr. Fullard's "delinquency" in making efforts to sell the house. As to the latter ground, a finding of "delinquency" sounds in neglect or negligence, and does not amount to the finding of bad faith (or vexatiousness or wantonness) necessary to satisfy the exception discussed. Mrs. Fullard recites evidence of footdragging by her former spouse in arranging for the sale of the home, but this does not justify an award under an exception we have repeatedly held applicable "only in extraordinary cases ... or when dominating reasons of fairness so demand." *Schlank v. Williams,* 572 A.2d 101, 108 (D.C.1990) (citations and internal quotation marks omitted). Insofar as the award rests upon Mr. Fullard's dilatory behavior in assisting the sale of the home, it must be vacated.

The matter is different as regards appellant's disregard of the court's express order concerning the removal of the chemical waste from the garage. As related earlier, Mr. Fullard did not challenge that order at the time, but instead sought to remove the materials himself,[5] causing expenses to Mrs. Fullard in both having the waste removed professionally and seeking reimbursement through the court. In finding that appellant had disobeyed "the explicit commands of this court," the trial court in effect found that he had behaved deliberately or in bad faith. Accordingly, this case fits within the exception that, " '[w]here an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention,' " attorney's fees may be awarded. *Andrews v. District of Columbia,* 443 A.2d 566, 569 (D.C.1982) (quoting *Harkeem v. Adams,* 117 N.H. 687, 691, 377 A.2d 617, 619 (1977)). In such a case, as we noted in *Andrews,* an award of attorney's fees " 'vindicates judicial authority without resort to the more drastic sanctions available for contempt of court and makes the prevailing party whole for expenses caused by his opponent's obstinacy.' " *Id.* (quoting *Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978)). Thus, contrary to Mr. Fullard's argument, it is beside the point that the trial court ultimately denied the wife's motion for contempt without prejudice; attorney's fees were available as a lesser sanction for appellant's conduct.

Therefore, we sustain the order requiring reimbursement of Mrs. Fullard for the $1,000.00 expenditure, but vacate the award of attorney's fees and costs and remand for reconsideration of the award in light of this opinion.

*So ordered.*

WAGNER, Associate Judge, concurring in part and dissenting in part:

I concur in that part of the decision of the court which holds that the trial court erred in awarding counsel fees to appellee

---

**5.** Nor, as stated earlier, note 3, *supra,* has he furnished us with a record permitting a conclusion that the order rested on a mistaken assumption that there were in fact waste materials in the garage.

based on appellant's delay in assisting in the sale of the parties' former marital home. I also agree with the court's decision declining to review appellant's challenge to the trial court's interpretation of the parties' contract and the award of damages to appellee, but not for the reasons given by the court as explained hereinafter. However, I dissent from that part of the court's opinion which holds that this case falls within the bad faith exception to the "American Rule," which governs the award of attorney fees in this jurisdiction,[1] and that, absent a finding of contempt, the trial court can award attorney's fees in what is essentially the resolution of a contract dispute.

### I.

Although appellant has not provided an adequate record for review of all issues he raises on appeal, the record is sufficient to disclose that the trial court erred in awarding counsel fees, and remand is not warranted, in my opinion. The record shows that the parties were granted an absolute divorce on November 13, 1989.[2] On June 1, 1990, appellee filed a motion for contempt against appellant for his delay in assisting with arrangements for the sale of the parties' former home as required by the divorce decree.[3] The trial court issued an order on June 12, 1990 requiring appellant to show cause why he should not be held in contempt for the violation cited in appellee's contempt motion. No additional motion for contempt was ever filed, and no further order to show cause was ever issued relating to the issues resolved by the court's rulings which are the subject of this appeal. Nor does the record, including the docket entries, reflect any amendments to the motion for contempt or order to show cause.

At a show cause hearing on June 22, 1990, the trial court held the motion for contempt in abeyance and entered a consent order providing for appellee to purchase appellant's interest in the home by paying him $3600, and appellant was ordered to execute a quit-claim deed in favor of appellee and to vacate the premises. The court scheduled a further hearing on the contempt motion for August 10, 1990. At that time, the trial court found that appellee had made payment in full for appellant's property interest and that appellant had executed all documents necessary to convey his interest to appellee. However, appellee claimed that she had discovered chemical waste in the garage of the home. The parties also reported that they had entered a separate agreement on July 26, 1990 which required appellant to "broom clean the house." Appellant argued that the terms of the agreement did not include the detached garage. The trial court ordered appellant to cause the material to be removed by August 26, 1990 or he would have to bear the expense of removal. Appellee was given "the option to contract with Eastern Chemical Waste Systems to remove the chemical waste and to deduct said costs from any money she may owe [appellant] pursuant to the Order of [the] Court, dated November 7, 1989."[4] The court's oral order specifying appellant's obligation to remove the waste material was not reduced to writing until September 7, 1990, after the time had expired for appellant to cause the removal of the debris. On that date the court modified its original oral order to provide that:

[Appellant] will be responsible for the financial expense involved in a professional inspection of the garage to assure that the chemical waste product was *totally* and *completely* removed, and if not, for any additional work such company must perform.

1. *See General Fed'n Women's Clubs v. Iron Gate Inn,* 537 A.2d 1123, 1127 (D.C.1988).

2. The judgment was not docketed until March 21, 1990.

3. Other issues raised in the motion are not related to the issues on appeal.

4. Appellant does not challenge the court's jurisdiction to entertain the contract dispute between the parties without prior notice, the filing of a complaint for breach, or any further pleading raising the issue by the parties. For that reason and because the record is inadequate to resolve the question, I do not consider it.

After the hearing on August 10, 1990 and prior to the entry of the written order recounting the court's earlier ruling, appellant personally removed the "alleged" chemical waste from the garage. The court continued to hold in abeyance the original contempt motion which addressed only appellant's failure to cooperate in the sale before the parties had reached a buy-out agreement.

The court held subsequent hearings and entered an order on April 9, 1991 resolving the remaining issues purportedly related to the original contempt motion. The court denied appellee's motion for contempt,[5] and ordered appellant to pay appellee $1000 as the full sum for removal of the "alleged" chemical waste from the garage and $3388 for attorney's fees.[6] The court predicated its award of attorney's fees on "[appellant's] delinquency in cooperating with [appellee] in making arrangements for the sale of their former marital home and his failure to follow the explicit commands of this court to hire a professional chemical removal company to remove the suspected chemical waste materials and debris which remained in the garage...."[7]

## II.

I agree with the majority that the trial court erred in awarding counsel fees based on appellant's dilatory behavior in assisting in the sale of the home. I cannot agree that the remaining facts of this case support an award of attorney's fees based on an exception to the "American Rule" which governs the award of attorney's fees in this jurisdiction. *See General Fed'n of Women's Clubs v. Iron Gate Inn, supra* note 1, 537 A.2d at 1127. Under the American Rule, absent express statutory authorization or contractual provision, each party

is responsible for his or her own attorney's fees. *Schlank v. Williams,* 572 A.2d 101, 108 (D.C.1990); *Passtou, Inc. v. Spring Valley Center,* 501 A.2d 8 (D.C.1985). There are a limited number of recognized exceptions to the rule, among which are: (1) when the losing party has acted wantonly, in bad faith, or for oppressive reasons; (2) where statutes so provide; and (3) when a person recovers a fund for another. *Passtou,* 501 A.2d at 11–12. Another recognized exception to the rule occurs when one is found to be in willful disobedience of a court order. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). This court has observed that even absent a finding of willfulness, the contemnor may be required to pay counsel fees to the aggrieved party. *D.D. v. M.T.,* 550 A.2d 37, 44 (D.C.1988). Neither an adjudication of contempt nor any of the exceptions is involved here.

The basis for the majority's holding is derived from language in *Andrews v. District of Columbia,* 443 A.2d 566 (D.C.1982) which reads: " '[w]here an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention,' " attorney's fees may be awarded. 443 A.2d at 569 (quoting *Harkeem v. Adams,* 117 N.H. 687, 691, 377 A.2d 617, 619 (1977)). The language from *Andrews* does not enunciate a new exception to the American Rule. At issue in *Andrews* was the validity of the trial court's order denying attorney's fees for the alleged bad faith conduct of the appellee. 443 A.2d at 567. In *Andrews,* this court simply recognized that forcing a party to seek judicial relief for a clearly

---

5. Although the order states that it is "without prejudice to renew if there is not full compliance with subsequent provisions of this Order," any subsequent effort to enforce by contempt must be pursued by a new motion. The issues raised by the earlier motion have been fully resolved by the consent order for the "buy-out," the full execution of the agreement embodied in the consent order, and the denial of the motion pertaining to defaults under the court's original divorce decree.

6. The court also ordered appellee to pay costs of $96.65, but he does not address the issue directly.

7. While recognizing that there appear to be numerous procedural errors in the proceedings below, I do not address them either because they are not raised on appeal or because they do not affect the disposition of the issues discussed in this opinion.

defined and established right may form the basis for a finding of bad faith which will support an award of attorney's fees. *See Andrews,* 443 A.2d at 569. Similarly, *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), cited by the majority and quoted in *Andrews,* is also premised on a finding of bad faith. 437 U.S. at 691, 98 S.Ct. at 2573.

Neither *Andrews* nor *Hutto* stands for the proposition that the trial court may impose an award of attorney's fees as a sanction in a contempt proceeding where the court denies the motion and absent some other recognized exception to the American Rule, as the majority appears to suggest. *See ante* at 518. Rather, in *Hutto,* the Supreme Court analogizes the award of attorney's fees based on the losing party's bad faith with the remedial fine imposed for civil contempt. *Hutto,* 437 U.S. at 691, 98 S.Ct. at 2573. In *Andrews,* this court held "[u]nder this [bad faith] exception, an award of attorney's fees 'vindicates judicial authority without resort to the more drastic sanctions available for contempt of court and makes the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Andrews, supra,* 443 A.2d at 569 (quoting *Hutto v. Finney, supra,* 437 U.S. at 689 n. 14, 98 S.Ct. at 2573 n. 14). Thus, the award of attorney's fees under the bad faith exception to the American Rule and as a sanction upon a finding of contempt are separate grounds for a fee award. The award of attorney's fees as a sanction for contempt presupposes a finding of contempt and a prevailing party. *See D.D., supra,* 550 A.2d at 44; *see also Perry v. O'Donnell,* 759 F.2d 702, 705 (9th Cir.1985); *Motley v. Yeldell,* 664 F.Supp. 557, 558 (D.D.C.1987). Contrary to the majority's conclusion, the denial of the motion for contempt is significant in that it eliminates as a basis for the award of attorney's fees a finding and adjudication of contempt. Therefore, we are left to consider the validity of the trial court's decision awarding attorney's fees under the bad faith exception to the American Rule.

Under the bad faith exception, we continue to adhere to the proposition that an award of attorney's fees is reserved for "extraordinary circumstances." *Andrews,* 443 A.2d at 569; *Schlank, supra,* 572 A.2d at 108; *General Fed'n of Women's Clubs, supra* note 1, 537 A.2d at 1128. In my view, the record in this case belies a claim of bad faith and extraordinary circumstances which would support an award of attorney's fees. The trial court based the award of attorney's fees on appellant's failure to secure the services of a professional to remove "alleged" chemical materials from the garage at the parties' residence as required by the court's oral order. The record reflects that the order was to be reduced to writing, but the trial court did not enter a written order embodying its oral ruling until one month later at which time it modified the original order. The modified order only required appellant to bear the financial cost of inspection and removal of the debris. Although the written order recounts the earlier oral ruling, it contains no provision ordering appellant "to cause" the removal of the waste material. Appellee's right to have appellant contract directly for removal of the material by a professional was not a "clearly defined and established right" which required court intervention. *See Andrews, supra,* 443 A.2d at 569.

According to the court's account of its oral order, appellant was given sixteen days (until August 26, 1990) to cause the waste to be removed or appellee "had the option to contract with Eastern Chemical Waste Systems to remove the chemical waste and to deduct said costs from any moneys she may owe [appellant] pursuant to the Order of this Court, dated November 7, 1989." During the one month period between the oral ruling on August 10, 1990 and the hearing on September 7, 1990, which resulted in the later order, appellant personally removed the "alleged" chemical waste from the garage. Therefore, appellant did not have the benefit of a written order specifying his obligation during the brief period before his time expired to comply with it.

Before a party is sanctioned for disobedience of an order of court, at the very least

there should be in effect a written order specifying clearly the obligations imposed by the court. The Superior Court's rules provide for submission of a proposed form of written order by counsel prevailing at argument. Super.Ct.Civ.R. 12–I(1).[8] It is essential that sanctions for disobedience be grounded upon

> an order that spells out "the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him."

*Ex parte Padron*, 565 S.W.2d 921 (Tex. 1978) (quoting *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex.1967); *see also D.D., supra*, 550 A.2d at 43 (to establish civil contempt, complainant must prove that contemnor was subject to the terms of the court order). The same rationale which underlies the requirements of an explicit order for the imposition of sanctions has equal validity when the question of bad faith disobedience to the court's order is involved. Here, there was in effect no written order which made clear that appellant was not to undertake removal of the debris personally as he did. The absence of an order specifying his responsibility weighs heavily against any finding that appellant acted in bad faith.

Moreover, the initial oral order provided appellant with two options: either he was to cause the waste to be removed by a chemical company by a date certain or he would be obligated to bear the expenses incurred by appellee in doing so. Until appellant disobeyed both alternative requirements, he could not be found to have improperly disobeyed the court's order. Certainly, appellant's failure to follow one of the two alternatives cannot provide the factual underpinnings for a finding that he acted in bad faith or engaged in "obstinate, unjust, vexatious, wanton or oppressive conduct." *See Andrews, supra*, 443 A.2d at 569. Indeed, there was no need for appellee to seek court intervention because

the oral order provided her with the option of getting a chemical company to remove the material and to deduct the cost from any money she might owe appellant pursuant to a prior order.

Furthermore, the trial court found that appellant made some effort to comply with the requirement by removing the material from the garage personally. Although appellant's actions were not fully consistent with the court's oral order, his efforts further belie any bad faith claim. *See id.*

The court's power to award attorney's fees under the bad faith exception to the American Rule is reserved for extraordinary circumstances. *Id.* The circumstances of this case, which cannot be altered on remand, do not present the type of bad faith conduct and extraordinary circumstances which warrant fee shifting under our case precedents.[9] Therefore, I respectfully dissent from that portion of the decision of the court which holds otherwise.

### III.

My reasons for agreeing with the court that appellant's appeal from the contract award is not subject to review differ from those of the majority. In my view, we are precluded from reviewing appellant's challenge to the award of contract damages because appellant failed to appeal from the initial order which determined liability and that part of the later order which set damages. *See* D.C.App.R. 3(a) (notice of appeal "shall designate the judgment, order, or part thereof from which the appeal is taken"). While not all technical defects in the notice of appeal will warrant dismissal, the absence of evidence that appellant intended an appeal from the specific judgment and a showing of prejudice to appellee caused by the mistake will justify dismissal. *Brookens v. White*, 254 U.S.App.D.C. 133, 135, 795 F.2d 178, 180 (D.C.1986); *Parry–Hill v. Downs*, 148 A.2d 715, 716 (D.C.1959).

Here, appellant noted an appeal from the "[o]rder granting plaintiff legal fees signed

---

**8.** It is the entry of the written order which triggers the time for noting an appeal. *See* D.C.App.R. 4(a)(1), (a)(3); *see also Singer v. Singer*, 583 A.2d 689 (D.C.1990).

**9.** Indeed, the trial court did not make a finding of bad faith before entering its order awarding attorney's fees.

on April 6, 1991 and entered on the Docket April 9, 1991." In the designation of record filed thereafter, appellant omits any reference to the order of September 10, 1990 (docketed September 12, 1990) and fails to designate any part of the record which indicates an intention to appeal any aspect of the contract damage award. Appellee claims she was prejudiced by appellant's failure to note an appeal from the award, that the narrow issue raised by appellant caused her to forego obtaining authority to counterdesignate portions of the record,[10] and that the record on appeal is insufficient for review. Since it cannot be fairly inferred from the record that appellant intended to appeal anything other than the award of attorney's fees, and since appellant has demonstrated prejudice, I am persuaded that the damage issue is not properly before the court.[11] *Brookens, supra,* 254 U.S.App.D.C. at 135, 795 F.2d at 180; *Parry–Hill, supra,* 148 A.2d at 716.

---

**10.** Appellee contends that she was never served with a copy of the designation of record and that she did not learn of its filing until after the complete record on appeal had been filed with the court. Appellee argues that she did not seek leave to designate additional parts of the record because of the narrow issue raised by appellant on appeal.

**11.** Even if the damage question were properly before this court, I agree with the majority that we could not review it because appellant has failed to provide a record adequate to demonstrate error. *See Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982) (appellant bears burden of presenting a record sufficient to demonstrate error).